

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO.AP-75,300

**EDWARD LEE BUSBY, JR., Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DIRECT APPEAL
### CAUSE NO. 0920589A FROM THE CRIMINAL DISTRICT COURT TWO
### TARRANT COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, JOHNSON, KEASLER, HOLCOMB and COCHRAN, JJ., joined . PRICE and WOMACK JJ., concurred.

### O P I N I O N

A jury convicted appellant on November 11, 2005, of capital murder. TEX. PEN. CODE ANN., §19.03(a)(7)(A). Pursuant to the jury's answers to the special issues set forth in TEX. CODE CRIM. PROC. Article 37.071, §§2(b) and 2(e), the trial judge sentenced appellant to death on November 17, 2005. Appellant raises eleven points of error on direct appeal. Deciding that these points have no merit, we affirm.

The evidence shows that on or about January 30, 2004, appellant and a female accomplice ("Kitty") abducted a seventy-eight-year-old woman in Fort Worth, then robbed and murdered her. The elderly victim suffocated from having multiple layers of duct tape wrapped tightly over her entire face that covered her nose and mouth. According to the medical examiner's testimony, approximately 23.1 feet of duct tape was wrapped around the victim's face with such force that her nose deviated from its natural position.

On February 1, 2004, an Oklahoma City police officer (Padgett) arrested appellant in Oklahoma City after stopping him for committing several traffic violations while driving the victim's car. Appellant made various statements to the FBI, Oklahoma police, and Fort Worth detectives between February 1st and February 3rd. Appellant initially claimed that he and Kitty obtained the victim's car in Fort Worth from someone named "JD" with the victim's body in the trunk and that appellant and Kitty merely disposed of the victim's body in Oklahoma. On February 3rd, appellant led the police to the location of the victim's body in Oklahoma. At that location, appellant made a tape-recorded statement to the police in which appellant abandoned the "JD" story and admitted that he and Kitty abducted, robbed, and killed the victim. On February 20th, appellant gave a written statement to the police and again admitted that he and Kitty abducted, robbed, and killed the victim. Appellant's February 3rd tape-recorded statement and his February 20th written statement portrayed Kitty as the leader of their criminal enterprise, with appellant following her instructions. However, appellant admitted in both of these statements that he wrapped the duct tape over the victim's face while also stating several times that he did not mean to kill her.

In points of error one through three, appellant claims that, during closing jury arguments at the guilt phase, the State made three direct comments on appellant's failure to testify. The record

reflects that appellant made three separate objections to these comments, and the trial court overruled all three objections.

During its closing jury arguments at the guilt-innocence phase, the defense relied heavily on portions of appellant's February 3rd and February 20th statements to the police in support of its argument that appellant did not intend to cause the victim's death. For example, the defense argued:

> [DEFENSE]: Something very interestingly [sic] happened in the case. Maybe it is only interesting to a lawyer who has spent a lot of time in cases, but I submit to you it is interesting. And that is that the State's very own evidence, specifically State's Exhibit No. 62, being the oral recording, the tape-recording made by the officer and the Defendant back on February 3rd of 2004, and State's Exhibit No. 99, being the written statement signed by the Defendant on February the 20th of 2004, the State's very own evidence which they supported, which they vouched for, which they brought to you, raised the issue of intent. Because replete throughout those statements there is reference after reference, after reference by Busby saying that was not my intent. That is not what I wanted. That is not what I desired. That is not what I planned. Replete in the State's evidence, not the Defense evidence, which you could be expected to cast a jaundice eye upon, but the State's evidence brought to you by a police officer of great experience. And then the Defendant's own words saying, that was not my intent. That is very important I submit to you.

The State made the following arguments (the emphasized portions of which appellant claims are direct comments on his failure to testify):

> [STATE]: And I'll mention a few things that I think are particularly interesting, but with regard to some things that Mr. Strickland said, when you boil it all down, they want you to take his word for it. There's Exhibit 62, the tape-recorded statement, Detective Johnson says now, you really haven't told us the whole story, have you, Mr. Busby? And he said, no, I haven't. He admits to lying right there on the spot.
>
> Remember when Officer Padgett stopped him on the street? He said where did you get this car? He said, well, my Aunt Geneva Coleman gave it to me. Well, do you know Laura Crane? No, I don't know her.
>
> This is the man they want you to take his word for. And he is lying to cops right there on the street. And when it comes to find out, they figure out, hey, this car is a car that he don't belong to be in, they take him in. They arrest him, do all of the things that you have heard about.

Is he telling the truth? No. Did he tell Detective Johnson on the side of the road that he hadn't told him the whole story? No. He says, well, I haven't told you the whole story.

**Now, on February the 20th, he again says, well, I still haven't told you the whole story. And, folks, I submit to you that it's a pretty logical deduction that he still hasn't told the whole story.**

\* \* \*

Oh, yeah, he wants you to take his word for it that Kitty made him do it. Kitty made me do this. Kitty made me do that. I couldn't resist Kitty.

Well, now he can't even keep his story straight, because in the statement that he first gave on the side of the road, they asked him why did you take her car? Well, Kitty told her [sic] that if I loved her, I would take somebody's car for her.

And then he comes along later, and why did you tape her up? I was afraid of Kitty. I was afraid Kitty was going to turn me into the police and tell everybody I did it all by myself. He can't keep it straight as to why he did it in the first place.

\* \* \*

The most interesting thing is he keeps saying Kitty made me do it. Kitty made me do it.

Well, you know, ladies and gentlemen, well, I love Kitty. I had to do all of these things because I love Kitty. I had to steal this poor woman's car who had just gone to the grocery store in the middle of the daytime two blocks from her house, but I had to because I love Miss Kitty.

Well, I guess if you are married and you have got a husband or wife who gets mad at the neighbor because they make too much noise when they are having a party and you tell your spouse to go over and kill them because they are making too much noise, if you love them, I guess that would be okay with Mr. Busby; or go steal their car, that would be okay with Mr. Busby.

**Now, ladies and gentlemen, this business of Kitty made me do it, that is not a defense, that is an excuse. It is high time that Mr. Busby took some responsibility for his own conduct instead of blaming it on everybody else.**

\* \* \*

Now, I would suggest to you, ladies and gentlemen, an interesting thing that we need to remember about the Kitty made me do it defense, the statement, State's Exhibit 99 -- and I want to read just briefly to you a paragraph that I thought was particularly pertinent.

Remember all of the chances that he had to leave and get away from Miss Kitty?

* * *

Here he is again.  Let's believe him.  Let's take his word for it.

"When I got back in the motel, I let the seat down in the back to be sure the woman was still alive and she was fine."  And you heard Dr. Gofton say that with that kind of duct tape on somebody's nose, they would live about a minute.  You want to believe him again?  "She was alive and well when we got back to the motel."

If he really wanted her to live, why didn't he bring her inside the motel room, take her inside out of the cold?

Remember this, Miss Kitty made him do it.  But he taped her up when he was away from Miss Kitty.  Here is statement 99.  Did Miss Kitty make him do it?  **It's time he takes responsibility in these statements to the police.  He doesn't do it.  He doesn't avail himself –**

* * *

Okay.  Ladies and gentlemen, they say that we want–they–we want you to have our cake and eat it too.  No, we want you to use your common sense.  We want you to look at all of the evidence we brought you and decide what portion you choose to believe and what portion you don't.

The test for determining whether prosecutorial argument is a comment on a defendant's failure to testify "is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *See Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007).  It is not sufficient that the language used might impliedly or indirectly be so construed.  *See id*.

We decide that the emphasized portions of the State's jury arguments were not manifestly intended, or of such a character that the jury would have necessarily and naturally taken them, as comments on appellant's failure to testify.  *See id*.  The State's closing arguments referred to inconsistencies between statements given to authorities by appellant and referred to specific statements made by appellant such as, "I still haven't told you the whole story."  It was reasonable and proper for the prosecutor to comment on the shifting nature of appellant's custodial statements

that were admitted into evidence. *See Cruz*, 225 S.W.3d at 549-50 (record clearly showed that prosecutor's closing jury arguments referred to defendant's own written statement which had been admitted into evidence and was, therefore, not a comment on defendant's failure to testify); *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004) (when a defendant makes a statement which is admitted into evidence, the State's references to the statement and comparison between the statement and the other evidence collected is not a comment on the defendant's failure to testify or his right to remain silent).

Appellant claims it is significant, if not dispositive, that the State used present tense verbs that "clearly and directly refer[red] to the here and now" and that, if "the prosecutor had been referring to some time in the past, he would have used the past tense" of those words. We disagree that the State's use of the present tense is dispositive and requires a holding that the State directly commented on appellant's failure to testify. *See Cruz*, 225 S.W.3d at 549 ("There is, however, no particular 'trigger' word or phrase that makes any jury argument automatically improper. Rather, any objectionable argument should be evaluated on a case-by-case basis for what it would 'necessarily and naturally' mean to a jury when taken in full context of its utterance."). We agree with the State that the emphasized portions of its arguments referred to "specific statements Appellant had made well before trial." Points of error one through three are overruled.

Appellant claims in point of error four that the trial court erroneously overruled his motion to declare the "10-12" provision of Article 37.071, § 2(f)(2), TEX. CODE CRIM. PROC., unconstitutional. Appellant argues that the "10-12" provision of the article violates the Eighth and Fourteenth Amendments of the United States Constitution, and that the jury should have been instructed as to the results of a failure to answer either special issue under the Texas statutory

scheme. Appellant relies primarily on *Mills v. Maryland,* 486 U.S. 367 (1988). We have previously rejected this claim. *See Resendiz v. State*, 112 S.W.3d 541, 548-49 (Tex. Crim. App. 2003). Point of error four is overruled.

Appellant claims in point of error five that the trial court erroneously denied his motion to declare Article 37.071, TEX. CODE CRIM. PROC., unconstitutional on its face because: (1) the mitigation special issue fails to place a burden of proof on the State regarding aggravating evidence, (2) the mitigation special issue permits the type of open-ended discretion condemned in *Furman v. Georgia*, 408 U.S. 238 (1972), (3) the mitigation special issue does not permit "meaningful appellate review," (4) the mitigation special issue fails to require that mitigation be considered, (5) the definition of "mitigating evidence" in the mitigation special issue is too narrow, (6) "various terms and phrases used in the three special issues" are not defined "in ways that would permit the jury to give full mitigating significance to those terms," (7) it permitted appellant to be sentenced to death as a result of "arbitrary and unchecked discrimination amounting to a denial of equal protection under the law," and (8) it is so vague as to be fundamentally unfair. Article 37.071 is not unconstitutional on its face. Appellant's multifarious arguments presented in this point of error have been rejected. *See Saldano v. State*, 232 S.W.3d 77, 104-09 (Tex. Crim. App. 2007) (and cases cited therein), *cert. denied*, 2008 U.S. LEXIS 2119 (Feb. 25, 2008). Point of error five is overruled.

Appellant claims in point of error six that Article 37.071 is unconstitutional on its face. He claims that Article 37.071 violates the Equal Protection Clause of the Fourteenth Amendment under the Supreme Court's decision in *Bush v. Gore*, 531 U.S. 98 (2000), because there "are no uniform, statewide standards to guide prosecutors in deciding" when to seek the death penalty so as to "prevent the arbitrary and disparate treatment of similarly situated people." We have previously

rejected this claim. *See Threadgill v. State*, 146 S.W.3d 654, 671-72 (Tex. Crim. App. 2004). Point of error six is overruled.

In point of error seven, appellant claims that the trial court "committed reversible error by failing to appoint appellant a lawyer in a timely manner." And, in point of error eight, appellant claims that the failure to appoint him "a lawyer in a timely manner" requires suppression of all of his "written and oral custodial inculpatory statements."

Officer Padgett testified at the suppression hearing that, after he arrested appellant in Oklahoma City on February 1st, Oklahoma state charges were filed against appellant for unauthorized use of a motor vehicle, improper right turn, and driving with a suspended license.[1] Padgett also testified at the suppression hearing that "within 48 hours," a "judge initial[ed] off [that] there was probable cause to make the arrest."

> Q. [STATE]: Tell Judge Salvant what that document is, please.
>
> A. [PADGETT]: This is the probable cause affidavit that I filled out for Edward Busby and it was for the unauthorized use of a motor vehicle, the improper right turn, and then driving suspension, and all of those were state charges.
>
> Q. Now, on the bottom part of the form actually some writing that is not yours, I take it?
>
> A. No, this here is–whenever we do a state charge, they have a notary at the jail. We have a notarized–that we signed it in front of a notary, and then Lieutenant Foreman at that point, he was the jail supervisor, so he signed it and then at the bottom, the next day it goes to the judge, the next day or that day, within 48 hours, and then the

---

[1] A Fort Worth detective (Johnson) also testified at the suppression hearing that, before her arrival in Oklahoma City on February 1st, she had "been made aware that a probable cause arrest warrant for Edward Lee Busby, Jr., for the offense of aggravated kidnapping had been issued earlier on February 1[st] of 2004." The record, however, contains no such warrant.

judge initials off there was probable cause to make the arrest.[2]

After being informed of and waiving his rights, appellant voluntarily made the February 1st through February 3rd custodial statements in Oklahoma City. On February 6th, a warrant was issued by a district judge in Fort Worth for appellant's arrest based on a capital-murder complaint filed that day by the Tarrant County District Attorney's Office. On Thursday, February 19th, Fort Worth detectives brought appellant from Oklahoma City to Fort Worth. That same day, appellant appeared before a Texas magistrate and requested appointment of counsel after being informed of his rights. Appellant made the February 20th written statement, after initiating contact with Fort Worth detectives by repeatedly asking to speak to them. Appellant also held a press conference on February 20th during which he repeated the claim that he did not mean to kill the victim when he wrapped duct tape around her face. Appellant was appointed counsel on Monday, February 23rd. He was indicted on March 31st.

Appellant appears to claim on appeal that he should have been appointed counsel when he was arrested in Oklahoma City on February 1st. He further claims that "appointment of counsel, coming as it did some 22 days after his arrest for this unusually high-profile crime, was far too late to allow that lawyer an opportunity to assist him in any meaningful way." The legal basis of appellant's claim (in the trial court and on appeal) that he should have been appointed counsel sooner than he was is not clear. On appeal, appellant cites to various state and federal constitutional

---

[2]Johnson also testified at trial that she had reason to believe that appellant had been "through the magistrate's warning" in Oklahoma City.

Q. [DEFENSE]: Did you have any reason to believe that he had been taken before any judge in Oklahoma City?

A. [JOHNSON]: I believe he had been through the magistrate's warning, yes.

provisions (without providing any argument or authority on why these parallel federal and state constitutional provisions should be construed differently) and to various provisions of the Texas Code of Criminal Procedure, particularly Article 26.052(e), which requires the appointment of counsel to an indigent defendant in a death-penalty case "as soon as practicable after charges are filed."

We note that appellant had no Sixth Amendment or statutory right to counsel when he voluntarily spoke to the authorities between February 1ˢᵗ and February 3ʳᵈ because no adversary judicial proceedings in Texas for this capital offense had been initiated against appellant during this period of time.[3] And, assuming attachment of appellant's Sixth Amendment right to counsel to this capital offense at the Texas magistrate hearing on February 19ᵗʰ,[4] suppression of appellant's February 20ᵗʰ statement is not required because appellant initiated contact with the authorities and voluntarily waived any Sixth Amendment right to counsel he may have had at the time.[5] In addition, appellant's February 20ᵗʰ statement did not violate any statutory right to counsel because appellant freely and

---

[3] *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (Sixth Amendment right to counsel is offense specific); *United States v. Gouveia*, 467 U.S. 180, 187-88 (1984) (Sixth Amendment right to counsel "attaches only at or after the initiation of adversary judicial proceedings against the defendant"); *Brewer v. Williams*, 430 U.S. 387, 398-99 (1977); *Green v. State*, 872 S.W.2d 717, 720 (Tex. Crim. App. 1994) (discussing "what events may serve to initiate adversary judicial proceedings for Sixth Amendment purposes" and assuming, without deciding, that defendant's Sixth Amendment right to counsel attached at magistrate's hearing); Article 26.052(e) (requiring appointment of counsel in death-penalty cases "as soon as practicable after charges are filed").

[4] *See Green*, 872 S.W.2d at 720.

[5] *See Michigan v. Jackson*, 475 U.S. 629, 630-33 (1986) (defendant's waiver of attached Sixth Amendment right to counsel is invalid in response to police-initiated interrogation); *Fuller v. State*, 829 S.W.2d 191, 205 (Tex. Crim. App. 1992) (defendant may unilaterally waive attached Sixth Amendment right to counsel during defendant-initiated contact with the police); *see generally Cross v. State*, 144 S.W.3d 521 (Tex. Crim. App. 2004).

voluntarily made this statement only one day after his request for appointment of counsel at the Texas magistrate hearing.[6]  Points of error seven and eight are overruled.

In point of error nine, appellant claims that, after denying his pretrial motion to suppress, the "trial court erred by failing to submit findings of fact and conclusions of law as requested by appellant."  The record, however, reflects that the trial court dictated its detailed findings and conclusions into the appellate record.  This was done in open court at a time when appellant's counsel was present and did not object to the trial court's method of satisfying appellant's request for findings and conclusions.  *See Murphy v. State,* 112 S.W. 3d 592, 600 (Tex. Crim. App. 2003) (trial court complies with statutory requirements to file findings and conclusions on issue of voluntariness of a defendant's confession when "it dictates its findings and conclusions to the court reporter, and they are transcribed and made a part of the statement of facts, filed with the district clerk and made a part of the appellate record").  Point of error nine is overruled.

In point of error ten, appellant claims that "the trial court committed reversible error by failing to submit [appellant's] requested jury charge regarding the voluntariness of his custodial statements."  Appellant claims that, under Article 38.23(a), TEX. CODE CRIM. PROC., the trial court erred in not submitting his requested charge instructing the jury not to consider his "alleged written confession" if appellant "was deprived of the assistance of counsel" prior to the "alleged written confession."  Article 38.23(a) provides:

---

[6]*See* Article 26.052(e) (requiring appointment of counsel in death-penalty cases "as soon as practicable after charges are filed"); *see also* Article 1.051 (c), TEX. CODE CRIM. PROC., ("if an indigent defendant is entitled to and requests appointment of counsel and if adversarial judicial proceedings have been initiated against the defendant," the defendant shall be appointed counsel "as soon as possible, but not later than the third working day after" the date of the defendant's request for appointment of counsel).

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

There is, however, no "affirmatively contested" evidence that raises any disputed fact issues on whether any of appellant's "alleged written confession[s]" were obtained in violation of any statutory or constitutional right to counsel; therefore, he was not entitled to his requested Article 38.23(a) jury instruction. *See Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007) (defendant entitled to Article 38.23(a) jury instruction only when evidence raises "affirmatively contested" fact issue that is material "to the lawfulness of the challenged conduct in obtaining the evidence"). As indicated in our discussion of points of error seven and eight, it is undisputed that appellant provided the February 1st through February 3rd statements before any statutory or constitutional right to counsel attached. It is also undisputed that his February 20th statement resulted from appellant initiating contact with the police, thus constituting a waiver of any statutory or constitutional right to counsel with respect to this statement. Point of error ten is overruled.

In point of error eleven, appellant asserts that the trial court erroneously denied seven defense challenges for cause. This Court has stated that harm from the erroneous denial of a defense challenge for cause occurs: (1) when a defendant uses a peremptory strike to remove a veniremember whom the trial court should have excused for cause at the defendant's request, (2) the defendant uses all of his statutorily allotted peremptory strikes, and (3) the defendant unsuccessfully requests an additional peremptory strike which he claims he would use to remove another veniremember whom the defendant identifies as "objectionable" and who actually sits on the jury. *See Saldano*, 232

S.W.3d at 91; *Newbury v. State*, 135 S.W.3d 22, 30-31 (Tex. Crim. App. 2004); *Johnson v. State*, 43 S.W.3d 1, 5-7 (Tex. Crim. App. 2001). In these circumstances, the trial court's erroneous denial of a defense challenge for cause harms the defendant by depriving him of a statutory peremptory strike that he otherwise would have had to remove the "objectionable" juror. *See Saldano*, 232 S.W.3d at 91.

Appellant argues that the trial court erroneously denied his challenges for cause to veniremembers Chang, Hedger, Mahan, Sickles, Crossman, Fielding, and Battershell. The State argues that appellant can complain only about the trial court's rulings on his challenges for cause to Chang, Hedger, and Mahan because appellant did not have to use any of his statutory peremptory strikes to remove the other four veniremembers (Sickles, Crossman, Fielding, and Battershell). *See Saldano*, 232 S.W.3d at 91 (harm from erroneous denial of defense challenge for cause occurs when, among other things, the defendant uses a peremptory strike to remove a veniremember whom the trial court should have excused for cause at the defendant's request).

We agree that the record reflects that the State (not appellant) used a peremptory strike on Sickles. The record also reflects that appellant did not use peremptory strikes on Crossman, Fielding or Battershell. Appellant accepted Crossman as the eighth juror and Fielding as an alternate juror. Battershell was not reached when the parties were exercising their peremptory strikes. We, therefore, agree with the State that appellant "can complain only about the strikes he expended upon" Chang, Hedger and Mahan.

The record also reflects that both sides exercised only their challenges for cause during individual voir dire, leaving forty-nine veniremembers from whom the twelve jurors and two

alternate jurors were chosen at the time the parties exercised their peremptory strikes.[7]  After eleven jurors had been seated and appellant had exhausted his fifteen statutory peremptory strikes, the trial court granted appellant's request for another peremptory strike, which appellant used on a veniremember named Burnett.  Immediately after this, when the parties reached veniremember Williams, the trial court denied appellant's request for what would have been appellant's seventeenth peremptory strike, after which Williams was seated as the twelfth juror.[8]

Appellant identified as "objectionable" a juror named White, whom appellant had accepted as the seventh juror when he had nine of his statutory peremptory strikes remaining.[9]  Appellant, however, stated that he was not requesting an additional peremptory strike to remove White.

> [DEFENSE]: Mr. White is an objectionable juror.  I do not believe the law requires us to state the reasons for our objections.  Although we have earlier indicated to the Court that we were particularly concerned by the fact that he has previously served on a capital murder jury.  Further, that he has had a son that was murdered.
>
> And for those, as well as a number of other reasons, which are not stated at this time, we are now in the position of having seated a juror objectionable to the Defense

---

[7]This appears to be the same procedure followed in another case entitled *Busby v. State*, in which we noted that this procedure did not comply with the "non-absolute" statutory requirement for exercising challenges in capital cases.  *See Busby v. State*, 990 S.W.2d 263, 268 (Tex. Crim. App. 1999).  Appellant does not complain on appeal about the procedure the parties used for exercising their peremptory strikes in this case.  *See id*. (suggesting that "non-absolute" statutory requirement for exercising challenges in capital cases is procedurally defaulted by failure to object).

[8]Appellant did not claim that he would have used his seventeenth peremptory strike to remove Williams.

[9]The record reflects that appellant did not challenge White for cause during individual voir dire.  When appellant later accepted White as the seventh juror when the parties were exercising their peremptory strikes, appellant claimed that White was "not acceptable" but that he had "no choice" but to accept White, even though appellant had nine of his statutory peremptory strikes remaining. The record, therefore, does not necessarily support the assertion that appellant had "no choice" but to accept White, since appellant could have used one of these nine peremptory strikes to remove White.

which we would not have had to seat but for the fact that the strike situation progressing as it did.

[THE COURT]: Does the State have any response?

[STATE]: Yes, I suppose I do, Your Honor. While I suppose it is true that [the defense] doesn't have to articulate a reason now as to why he finds [White] objectionable, I would just like the record to reflect, and I think the Court will recall, that he was questioned extensively about his prior jury service and also the situation involving his son. And he was–he was acceptable to both sides. Neither side tried to disqualify him in any manner.

\* \* \*

[THE COURT]: Was that your request? An extra [peremptory] strike at this point?

[DEFENSE]: No. All I'm doing, Judge, is stating on the record that [White], number 46 is objectionable to us.

\* \* \*

And with all–all respect to [the State], I think he is attempting to blur the line between a challenge for cause and an objectionable juror.

Mr. White was not challenged for cause. He was not challenged for cause because he did not appear to be challengeable for cause. But he is nonetheless objectionable to us.

And under the procedure that we have used here, that is, instead of striking as we go along, the mini-panel procedure, this is the only opportunity we have to state our objection. We could have made a spurious challenge for cause which the Court would not have entertained.

But at any rate, I think the record speaks for itself. But we have exhausted our strikes. We have not got an additional strike. And this man that is on the jury is objectionable to us for a plethora of reasons.

[STATE]: Could I just point one thing out for the record?

In light of [the defense] claim that Mr. White is objectionable, I would point out that on juror 18, they used their sixth strike. They didn't use their seventh strike until juror number 24, which means there was ample opportunity to use a strike on Mr. White if they indeed intended to do that, if he was so objectionable.

[DEFENSE]: He was just one of many people that were objectionable to us, Judge. And we used–we used 16 strikes on people that were equally, if not more, objectionable to us. We just ran out of strikes for all of the objectionable people that

showed up for this panel. It is what it is. I just wanted–

[THE COURT]: That is right. It is what it is. The record will reflect, it is what it is.

Appellant argues on appeal that the "unique way in which this jury was selected" makes it irrelevant that appellant had an opportunity to remove White with one of his nine remaining statutory peremptory strikes when he accepted White as the seventh juror.[10] Assuming that appellant could have used an extra peremptory strike from the trial court to retroactively remove White under these circumstances,[11] we are not persuaded that the "unique way in which this jury was selected" excused appellant's failure to request an additional peremptory strike to use on White after appellant had exhausted his peremptory strikes and identified White as the "objectionable" juror. *See Saldano*, 232 S.W.3d at 91 (harm from erroneous denial of defense challenge for cause occurs when, among other things, defendant unsuccessfully requests an additional peremptory strike that he claims he would have used to remove a veniremember whom the defendant identifies as "objectionable" and who actually sits on the jury). In fact, the record reflects that the trial court specifically asked appellant if he was requesting an extra peremptory strike when appellant identified White as "objectionable," and appellant responded, "No. All I'm doing, Judge, is stating on the record that [White], number 46 is objectionable to us."

We also set out the entirety of appellant's argument with respect to the merits of the trial court's rulings on appellant's challenges for cause:

> Appellant challenged the seven enumerated venire persons for a variety of disqualifying answers given in response to questions from both the State and the

---

[10]*See* Footnote 9.

[11]*See Newbury*, 135 S.W.3d at 32 n.2.

defense. In each instance, the trial court incorrectly denied the challenge.[12]

This portion of appellant's eleventh point of error is inadequately briefed. *See* TEX. R. APP. PROC. 38.1(e), (f), (h). This Court has no obligation to construct and compose appellant's issues, facts, and arguments "with appropriate citations to authorities and to the record." *See id.* Assuming, therefore, that appellant could establish that he was deprived of a statutory peremptory strike from any erroneous rulings on his challenges for cause, he still presents nothing for review. *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (appellate court has no obligation to consider inadequately briefed points of error). Point of error eleven is overruled.

The judgment of the trial court is affirmed.

Hervey, J.

Delivered: May 14, 2008
Publish

---

[12]We note that, assuming the conditions for establishing harm are met, appellant would have to show that the trial court erroneously denied his challenges for cause to two of the three veniremembers (Chang, Hedger, and Mahan), since appellant received an extra peremptory strike. *See Newbury*, 135 S.W.3d at 31.