

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00077-CR

Tyron Ramon **DUCKWORTH**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR7499
Honorable Melisa Skinner, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
              Patricia O. Alvarez, Justice
              Luz Elena D. Chapa, Justice

Delivered and Filed:  July 24, 2013

AFFIRMED

Tyron Ramon Duckworth was found guilty of sexual assault of a child and was sentenced to twenty years imprisonment. We affirm.

In April 2010, the complainant, Brenda G., was sixteen years old. Her friend, Angela M., was seventeen years old and dating Duckworth. On April 26, 2010, Brenda G. and Angela M. were with Duckworth, who was twenty-six years old, at his house. Brenda G., Angela M., and Duckworth began drinking. According to Brenda G., she was sexually assaulted multiple times by Duckworth.

## SANE NURSE EXAMINER TESTIMONY

In his first issue, Duckworth argues that his constitutional right of confrontation was violated when the SANE nurse examiner testified. Duckworth argues that his right to confrontation pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), was violated when the SANE nurse examiner read from the report she prepared as a result of her examination of Brenda G. However, Duckworth did not preserve this issue for appeal. At trial, Duckworth objected to the SANE nurse examiner testifying about her report, arguing that it was hearsay. He did not object to his right of confrontation being violated. Thus, his complaint on appeal does not comport with his objection at trial. *See* TEX. R. APP. P. 33.1.

Duckworth also argues that the SANE nurse examiner reading from her medical report was inadmissible hearsay because the SANE nurse examiner had not advised the declarant of the importance of telling the truth, as required by Texas Rule of Evidence 803(4).[1] Rule 803(4) provides the following:

> **Rule 803. Hearsay Exceptions: Availability of Declarant Immaterial**
>
> The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . .
>
> (4) **Statements for Purposes of Medical Diagnosis or Treatment**. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

---

[1] We note that in the heading of his first issue, Duckworth states that the trial court erred in allowing the nurse examiner to testify even though she "had not advised Ms. [*Angela M.*] of the importance of telling the truth, as required by Texas Rule of Evidence 803(4)." (emphasis added). However, in his substantive discussion of this issue, Duckworth argues that the trial court erred in allowing the nurse examiner to testify about her medical report because "there was no testimony offered by the proponent that the nurse advised *Brenda* that truth telling was a vital component or that she was aware of the necessity of truth telling." (emphasis added). Thus, we assume Duckworth's reference to Angela M., who was not the complainant, was a typographical error. To the extent it is not in fact a typographical error, Duckworth has failed to adequately brief the issue. *See* TEX. R. APP. P. 38.1(i); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) (explaining that an appellate court "has no obligation to construct and compose appellant's issues, facts, and arguments with appropriate citations to authorities and to the record") (citations omitted).

The Texas Court of Criminal Appeals has explained that in order for evidence to be properly admissible under this exception to the hearsay rule, the State, as the proponent of the evidence, must show that the declarant was aware that the statements being made were for the purpose of diagnosis or treatment. *Taylor v. State*, 268 S.W.3d 571, 589 (Tex. Crim. App. 2008). Further, the State must show that the declarant was aware that proper diagnosis or treatment was dependent on the veracity of her statements. *Id.* We review the trial court's decision to admit hearsay evidence under such an exception for abuse of discretion. *Id.* at 579.

The SANE nurse examiner testified that she examined the complainant, Brenda G., at the hospital on April 27, 2010 (the day after Brenda G. testified she was assaulted by Duckworth). According to the nurse examiner, when a patient, like Brenda G., arrives at the emergency room, the patient is first triaged and a determination is made as to whether the patient is suffering from a life threatening emergency. If not, then the nurse examiner is called to perform an examination. The nurse examiner testified that she takes the patient to another area of the hospital for the examination. She explains the exam process to the patient, including that she takes a history. This history she obtains from the patient is for the purpose of determining "in what ways I need to treat" the patient and "what injuries I need to look for." According to the nurse examiner, when she takes a history from a patient, she does so for the purpose of helping her diagnose and treat the patient. She testified that she asks the patient if she "can tell me what happened." When the patient is relating her history, the nurse examiner does not ask any questions and writes down "word for word" what the patient related. The nurse examiner testified that she then performs a head-to-toe exam. These procedures were followed in this case. According to the nurse examiner, after she examined Brenda G., she prepared a sexual assault exam report in which she documented statements made by Brenda G. during the examination. At trial, the nurse examiner read from her report.

Although the nurse examiner did not specifically testify that she informed Brenda G. of the importance of being truthful in relating her history, the nurse examiner did testify that Brenda G. was informed about the purpose for the exam and the process of the exam. *See Lathan v. State*, No. 04-12-00486-CR, 2013 WL 1641166, at *2 (Tex. App.—San Antonio Apr. 17, 2013, no pet.). Further, the examination took place in a hospital a day after the incident, and at the time of the examination Brenda G. was sixteen years of age. *See id.* "Regarding the complainant's awareness that her diagnosis and treatment were dependent on the veracity of her statements, the Texas Court of Criminal Appeals has instructed that in the context of a 'physician's cold examination table,' 'it seems only natural to presume that adults, and *even children of a sufficient age or apparent maturity*, will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest." *Id.* (quoting *Taylor*, 268 S.W.3d at 589) (emphasis added). Here, Brenda G. was sixteen years old; she was examined in a hospital a day after the incident, and the nurse examiner explained the entire process to her before obtaining the history of what happened. Accordingly, the trial court did not abuse its discretion in inferring that the complainant had an implicit awareness her examination was dependent on the veracity of her statements. *See id.* (holding that trial court did not abuse discretion in inferring that the complainant, a sixteen year-old girl who had been examined by a sexual assault nurse examiner, had an implicit awareness that her examination was dependent on the veracity of her statements).

Duckworth also argues in a conclusory fashion that "statements regarding fault or who caused the injury are normally not admissible because they are not reasonably pertinent to diagnosis or treatment unless those statements are made in a young child abuse scenario." Duckworth cites no support for this assertion. In fact, the Texas Court of Criminal Appeals has not limited such an analysis to "a young child abuse scenario," but has explained that identity may be pertinent to diagnosis and treatment "because it is important for a physician to discover the extent

of the child's emotional and psychological injuries — particularly when the perpetrator might be a family or household member and it is important to remove the child from the abusive environment." *Taylor*, 268 S.W.3d at 591. Here, Brenda G. was a minor and these concerns are applicable. Moreover, any erroneous statement admitted regarding identity of the perpetrator was harmless in this case as identity was not an issue at trial. *See* TEX. R. APP. P. 44.2(b) (harmless error standard for nonconstitutional errors); *Vela v. State*, No. 11-09-00210-CR, 2011 WL 1084795, at \*2 (Tex. App.—Eastland 2011, pet. ref'd) (holding that any error in allowing the doctor to testify regarding the victim's statement about identity of the perpetrator of the sexual abuse was harmless because identity was not an issue in the case). The issue was whether the jury believed Brenda G.'s testimony that Duckworth had sexually assaulted her. There was no issue as to the identity of the person who allegedly sexually assaulted Brenda G.

Finally, with regard to the SANE nurse examiner testimony, Duckworth argues that his trial counsel was ineffective for not making a *Crawford* objection to the nurse examiner's testimony. We measure a claim of ineffective assistance of counsel against the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (applying *Strickland* test). A person claiming that counsel was ineffective must prove, by a preponderance of the evidence, that (1) counsel's performance was deficient, falling below an "objective standard of reasonableness," and (2) the deficient performance prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) (quotation omitted).

Further, we "indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that the challenged action might be considered sound trial

strategy." *Id.* (quotation omitted). "The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel." *Id.* "The *Strickland* test is judged by the 'totality of the representation,' not by counsel's isolated acts or omissions, and the test is applied from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Id.*

Thus, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.*; *Thompson*, 9 S.W.3d at 813. In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Bone*, 77 S.W.3d at 833. "Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). "If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Id.* Here, although Duckworth filed a motion for new trial, the motion did not raise ineffectiveness. Therefore, the record does not reflect trial counsel's reasons for failing to object to the nurse examiner's testimony pursuant to *Crawford*, and we do not find that his counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See id.*

**SECTION 22.011 OF THE TEXAS PENAL CODE**

In his second issue, Duckworth argues that the trial court erred in denying his motion to set aside the indictment. According to Duckworth, at a pretrial hearing, he "objected to section 22.011 of the Texas Penal Code and the indictment because neither on its face require the State to prove that [he] knew or should have known that the complainant was under seventeen years of age at the time of the events alleged in the indictment." We review a trial court's denial of a motion to quash an indictment de novo. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007).

Duckworth specifically argues that section 22.011 is unconstitutional under both the Texas and U.S. Constitutions because it does not require the State to prove that he had a culpable mental state relating to the complainant's age and because it does not recognize an affirmative defense based on his reasonable belief that the complainant was seventeen years of age or older. This court has already rejected this argument in *Byrne v. State*, 358 S.W.3d 745, 747 (Tex. App.—San Antonio 2011, no pet.); *Lathan v. State*, No. 04-12-00486-CR, 2013 WL 1641166 (Tex. App.—San Antonio Apr. 17, 2013, no pet.); and *Branson v. State*, No. 04-12-00134-CR, 2013 WL 2645184 (Tex. App.—San Antonio June 12, 2013, no pet. h.). We will continue to follow our existing precedent and thus hold that Duckworth's constitutional rights were not violated.

**MOTION FOR MISTRIAL**

In his third issue, Duckworth argues that the trial court "erred when it granted the State's motion for continuance and denied [his] motion for mistrial when the alleged victim failed to appear after being called to testify during the Defendant's case in chief." Duckworth then cites the following facts: After Brenda G., the complainant, testified on behalf of the State, he requested that she remain under subpoena. The trial court granted his request, and upon the closing of the State's case in chief on the afternoon of Wednesday January 11, 2012, Duckworth called Brenda G. as a witness but she was not present. The trial court then recessed until the following morning,

Thursday January 12, 2012, and issued a warrant for Brenda G. The next morning, Brenda G. had still not been found by local authorities so the trial court recessed until 1:00 p.m. The State then filed a motion for continuance. Duckworth objected and moved for a mistrial. The trial court granted the State's motion for continuance and recessed the trial until Tuesday January 17, 2012, at 8:30 a.m. On January 17th, Brenda G. appeared and was called by Duckworth as a witness. In his brief, the following is the entirety of his legal argument with regard to this issue:

> The Defendant's rights to a fair trial by an impartial jury and due process rights guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 10, 14, 15, and 19 of the Texas Constitution were violated and the Court should have granted a mistrial.

The above does not constitute adequate briefing of his issue. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities and to the record."); *Busby*, 253 S.W.3d at 673. Thus, Duckworth has not presented anything for review.

### CROSS EXAMINATION OF COMPLAINANT

In his fourth issue, Duckworth argues that the trial court erred when it did not allow him to question Brenda G. "about fleeing or not appearing in court." He argues that he "should have been able to tell the jury that the alleged victim fled to show consciousness of guilt, specifically lying." For support, he cites *Taylor v. State*, 672 S.W.2d 262, 264 (Tex. App.—Waco 1984, no pet.), and *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994). These cases, however, involve an accused's post-offense flight, not the failure of a subpoenaed witness to appear at trial. In *Taylor*, 672 S.W.2d at 263, the defendant fled the scene of the crime and was apprehended by security officers. In *Bigby*, 892 S.W.2d at 883, the court of criminal appeals noted that to "support the admission of evidence of escape from custody or flight, it must appear that the escape or flight have some legal relevance to the offense under prosecution." Duckworth has not cited any

authority for the proposition that evidence of *a witness's failure to appear at trial* is admissible to show a consciousness of guilt. Further, we agree with the State that to the extent that evidence of Brenda G.'s failure to appear was relevant, it was only for purposes of impeaching her credibility. However, as noted by the State, under Texas Rule of Evidence 608(b), specific instances of conduct for the purpose of attacking the credibility of a witness is not permitted, unless the conduct constitutes a conviction as provided by Rule 609. *See* TEX. R. EVID. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence."). Therefore, we find no abuse of discretion by the trial court in sustaining the State's objection.[2]

In his fifth issue, Duckworth argues the trial court erred "when it denied [Duckworth] the ability to cross-examine the alleged victim Brenda [G.] regarding her MySpace profile in which she had several inconsistent statements including but not limited to her age." According to Duckworth, "[i]n discussing the alleged victim's MySpace profile, [he] also intended to impeach the alleged victim and to question the credibility of the alleged victim." However, as noted previously, specific instances of conduct for the purpose of attacking the credibility of a witness is not permitted, unless the conduct constitutes a conviction as provided by Rule 609. *See* TEX. R. EVID. 608(b). Thus, the trial court did not abuse its discretion in sustaining the State's objection.[3]

---

[2] We note that Duckworth also summarily states that his "rights to a fair trial by an impartial jury and due process rights guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 10, 14, 15, and 19 of the Texas Constitution were violated and the Court should have allowed the Defendant to question the alleged victim about fleeing the Court." This is the extent of his briefing on whether his constitutional rights were violated as related to his fourth issue. Thus, to the extent he is arguing his constitutional rights were violated, he has inadequately briefed the issue. *See* TEX. R. APP. P. 38.1(i); *Busby*, 253 S.W.3d at 673.

[3] We note that Duckworth also argues that the trial court's failure to allow him to cross-examine Brenda G. about her MySpace profile violated his rights to a fair trial by an impartial jury and due process rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and Article I, sections 10, 14, 15, and 19 of the Texas Constitution. This is the extent of his briefing on how his constitutional rights were violated, and thus he has inadequately briefed the issue to the extent he is arguing his constitutional rights were violated. *See* TEX. R. APP. P. 38.1(i); *Busby*, 253 S.W.3d at 673.

We therefore affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish