

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-81,584-01

### EX PARTE JOHN THUESEN, Applicant

### ON REVIEW OF APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM CAUSE NO. 09-02136-CRF-272 IN THE 272nd DISTRICT COURT
### BRAZOS COUNTY

*Per curiam*.

### OPINION

This is an initial application for a writ of habeas corpus filed pursuant to the

provisions of Texas Code of Criminal Procedure Article 11.071.[1]

Applicant was charged with capital murder after he fatally shot his girlfriend,

Rachel Joiner, and her brother, Travis Joiner, with a firearm during the same criminal

transaction in 2009. Rachel lived with her brother Travis and both attended Texas A & M

---

[1] All references to articles refer to the Texas Code of Criminal Procedure unless
otherwise stated.

University. Rachel had been angry with Applicant during the week of the offense and indicated that she wanted "space" from him. Applicant disregarded the advice of a friend to give Rachel the "space" she wanted, and he took a loaded semiautomatic firearm to Rachel and Travis's house. He secretly entered their home and waited for about ten hours for Rachel to return. While waiting, he sent Rachel misleading text messages indicating that he had gone out with friends. When Rachel came home, Applicant showed her his loaded gun and held her down on the couch. They argued and Rachel tried to get away from him. He shot her as she was trying to escape through the garage door. He shot her two more times as she tried to flee. When Travis came into the room, Applicant shot him multiple times, as well.

Before Applicant met Rachel, he served honorably in the Marine Corps, including combat duty in Iraq for several months. At trial, Applicant's counsel introduced evidence of Applicant's military service and mental disorders, including depression and post-traumatic stress disorder (PTSD). Relying on expert testimony and the testimony of medical professionals who had treated Applicant, trial counsel argued at the guilt phase that, due to these disorders, Applicant did not intentionally or knowingly kill the victims. At the punishment phase, through the testimony of thirty witnesses, counsel sought to rebut the State's future dangerousness case and provide mitigating evidence.

In May 2010, a jury found Applicant guilty of the offense of capital murder. The jury answered the special issues submitted pursuant to Article 37.071, and the trial court,

accordingly, set Applicant's punishment at death. This Court affirmed Applicant's conviction and sentence on direct appeal. *Thuesen v. State*, No. AP-76,375 (Tex. Crim. App. Feb. 26, 2014) (not designated for publication).

In his application for a writ of habeas corpus, Applicant raises twenty-two allegations in which he challenges his conviction and sentence. Two evidentiary hearings were held in the convicting court.[2] Applicant's trial attorneys, his appellate attorney, and many other witnesses testified at these hearings. Applicant submitted numerous affidavits and other documentary evidence. In 2019, the habeas court entered findings of fact and conclusions of law recommending that the relief sought be denied.

This Court has reviewed the entire record with respect to Applicant's allegations. In twenty of Applicant's claims, he alleges ineffective assistance of trial and/or appellate counsel. Specifically, Applicant asserts that counsel were constitutionally ineffective in:

- failing to properly develop expert witnesses on PTSD, present punishment-phase expert testimony on PTSD, and investigate, discover, and present lay witness testimony regarding his PTSD (allegations one, five, and eight);

- failing to effectively present expert testimony at the guilt phase regarding Applicant's intent, presenting "inadequate and unsupported" expert testimony; and failing to present the testimony of a PTSD expert and a forensic pathologist with expertise in bullet trajectories (allegation two);

- failing to effectively present credible and accurate evidence of Applicant's PTSD

---

[2] In 2014, the first habeas judge, the Honorable Travis B. Bryan, conducted an evidentiary hearing in which several witnesses testified, including Applicant's trial attorneys and his appellate attorney. In 2018, following a remand by this Court, the third habeas judge, the Honorable J.D. Langley, conducted a second evidentiary hearing in which several more witnesses testified and he took judicial notice of the first hearing.

at the guilt phase of trial, failing to file a law suit or extraordinary writ to force the trial court to allow the defense to question a Veterans Administration (VA) doctor about matters beyond his diagnosis and treatment of Applicant, and failing to bring a related claim on appeal (allegation three);

• failing to adequately prepare and rehabilitate the defense's guilt-phase expert witness (allegation four);

• failing to present relevant evidence to show that Applicant would not be a future danger in prison because counsel did not present the testimony of a certain future-danger expert, did not present the testimony of a particular jail guard, did not elicit all available testimony from a defense witness, and did not present expert witness testimony that Applicant would not be a future danger based on his PTSD (allegation six);

• failing to present evidence that Applicant was never formally diagnosed by the VA with—or "properly treated for"—PTSD (allegation seven);

• failing to file a change of venue motion, noting "[t]he Aggie community's unique bond itself is prejudicial against outsiders" and extensive media coverage (allegation nine);

• failing to impeach the testimony of Applicant's high school girlfriend about a "disturbing incident" involving Applicant (allegation ten);

• failing to object on the basis of gender discrimination to the State's peremptory strike of a prospective juror (allegation eleven);

• failing to appeal the trial court's overruling of trial counsel's race-based objection to the State striking the same prospective juror (allegation twelve);

• performing deficient jury selection with regard to three prospective jurors and failing to raise a related claim on appeal (allegation thirteen);

• making bad decisions about the selection and presentation of certain lay witness testimony and failing to bring a related claim on appeal (allegations fourteen and fifteen);

• failing to raise the theme of mental illness in the defense's opening argument at the punishment phase (allegation sixteen);

- failing to object and raise a claim on appeal based on a portion of the prosecutor's closing argument that included facts outside the record regarding the prosecutor's stepfather's military service and PTSD (allegation seventeen);

- failing to make proper and timely objections to the admission of: a protective order Applicant's ex-girlfriend obtained against him, questions eliciting testimony about Applicant's appearance after the shootings, character evidence elicited during cross-examination of the defense's expert, evidence of the character and personality traits of the victims, phone records reflecting Applicant's calls before the shootings, and the "anti-sympathy" instruction in the jury charge (allegation eighteen);

- failing to raise the above issues on direct appeal (also allegation eighteen);

- failing to bring claims on appeal that the trial court erred in denying certain pretrial motions challenging the constitutionality of Texas's statutory scheme governing capital murder and the death penalty (allegation nineteen); and

- objecting to the statutory "10-12" instruction and yet reminding jurors twice of the instruction during closing arguments (allegation twenty).

In reviewing claims of ineffective assistance of counsel, we must decide whether Applicant has demonstrated by a preponderance of the evidence that his counsel's representation fell below an objective standard of reasonableness, and whether Applicant has shown a reasonable probability that, but for counsel's deficient conduct, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *see also Ex parte Saenz*, 491 S.W.3d 819, 826 (Tex. Crim. App. 2016). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.* Our review is highly deferential to counsel: "A fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In the instant case, Applicant has failed to satisfy the *Strickland* test regarding all of his allegations of ineffective assistance.

In Applicant's twenty-first allegation, he contends that Article 37.071 improperly limits the evidence that a jury may consider mitigating in violation of the Eighth and Fourteenth Amendments to the United States Constitution. In Applicant's twenty-second allegation, he argues that his death sentence is unconstitutional because prosecutors have arbitrary discretion to seek the death penalty and there are no uniform statewide standards to guide them in that decision. This Court has previously rejected substantially similar constitutional challenges. *See, e.g., Mays v. State*, 318 S.W.3d 368, 396 (Tex. Crim. App. 2010); *Busby v. State*, 253 S.W.3d 661, 667 (Tex. Crim. App. 2008); *see also Jenkins v. State*, 493 S.W.3d 583, 618 (Tex. Crim. App. 2016).

We have reviewed all the evidence in the writ record, the record of both writ hearings, the habeas court's findings of fact and conclusions of law, Applicant's filings, and the relevant portions of the direct appeal record. We find that the record supports the habeas court's findings and conclusions and we adopt them, with the exception of finding 12, finding 137, the first sentence of finding 145, sub-claim E of finding 253, finding 262, footnote 5, and conclusions of law 2 and 60. Based on the habeas court's findings of fact and conclusions of law and our own review of the record, we deny relief on all of

Applicant's allegations.  Further, we deny all other relief Applicant requests.

Delivered: February 5, 2020

Do not publish