

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00299-CR

**ERIC LEE MALDONADO,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 34951CR

## MEMORANDUM OPINION

Eric Maldonado was convicted of the offense of capital murder and sentenced to life in prison without the possibility of parole. TEX. PEN. CODE ANN. § 19.03(a)(2) (West 2011). Maldonado complains that the evidence was insufficient for the jury to have found him guilty; that the trial court abused its discretion by admitting business records that were not on file for fourteen days prior to the start of trial; that the trial court abused its discretion by failing to strike a member of the venire panel; abused its discretion by admitting autopsy photographs and photographs of the victim's body as

located in the woods; abused its discretion by not instructing the jury or granting a mistrial regarding a shotgun found in a vehicle; abused its discretion in the admission of evidence regarding a casino trip; and abused its discretion in the admission of drug evidence. Because we find no reversible error, we affirm the judgment of the trial court.[1]

*Sufficiency of the Evidence*

In his first issue, Maldonado complains that the evidence was insufficient for the jury to have found him guilty of capital murder. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v.*

---

[1] Maldonado was tried with two co-defendants whose appeals are also pending before this Court: Fernando Juarez, No. 10-11-00213-CR, and Ruben Hernandez, No. 10-11-00240-CR.

*State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

*Factual Background*

Ruben Hernandez was an employee at an Exxon in Ennis, Texas, which was operated by Mohammed Hashemi, the victim. Hernandez was working with Hashemi on the evening of the murder. The evening of the offense Hernandez sent text messages to Juarez which told Juarez when Hashemi was leaving to take a deposit to the bank and how much money was in the deposit. Maldonado, Fernando Juarez, and Isaiah Gonzalez[2] were in a vehicle awaiting Hashemi's departure. Maldonado, Juarez, and Gonzalez had decided not to rob Hashemi at the Exxon because it was too crowded. Instead they decided to ambush Hashemi on his way to the bank. Juarez was driving the vehicle. It appeared to Gonzalez that Juarez and Maldonado were familiar with

---

[2] Isaiah Gonzalez was not tried with the other co-defendants because he made an agreement with the State for a reduced sentence in exchange for his testimony against Maldonado, Juarez, and Hernandez.

Hashemi's route and knew the bank where he was going to make the deposit because they had been planning the robbery for a while. Maldonado was armed with a .380 caliber pistol and Gonzalez was armed with a Cobray Model M-11 9 millimeter firearm ("Mac-11"). Maldonado had purchased the .380 caliber pistol sixteen days prior to the offense.

Juarez pulled the vehicle in front of Hashemi to stop him and Maldonado and Gonzalez got out and approached Hashemi's minivan. Gonzalez stated that before they got out of the vehicle Maldonado had told him to empty his clip if anyone saw them. Gonzalez pointed the Mac-11 at Hashemi. Hashemi was attempting to unbuckle his seat belt when Maldonado suddenly shot him with the .380 caliber pistol. Ballistics testing confirmed that Hashemi was killed by the .380 caliber pistol purchased by Maldonado. Gonzalez stated that he was in shock and did not unlock the passenger door of the van for Maldonado so Maldonado ran back to the vehicle driven by Juarez. Juarez drove off. Gonzalez got in the minivan with Hashemi still in the driver's seat and followed Juarez. Shortly thereafter, Maldonado got out of Juarez's vehicle and sat in the passenger seat of the minivan. At some point the minivan passed Juarez and turned off onto a dirt road, where it got stuck. Maldonado, Juarez, and Gonzalez were approached by the landowner who told them to leave.

After getting the minivan unstuck, Maldonado drove the minivan to Ennis Paint where he had just recently stopped working. Juarez followed in the second vehicle.

Maldonado and Gonzalez dragged Hashemi's body in the woods near Ennis Paint and left it. The minivan was abandoned at a different location and burned by Maldonado after he removed two envelopes with money. Gonzalez took a third envelope of money from the minivan. The masks, rubber gloves, and the t-shirt Maldonado was wearing were thrown out of the window of the car on the same road where the minivan was abandoned. Various DNA testing on the masks, gloves, clothes, and shoes allegedly worn by Maldonado and Gonzalez showed blood that was linked to Hashemi. Additionally, Maldonado and Gonzalez could not be excluded from other DNA recovered off of those items. Juarez's DNA was not found on any articles.

Maldonado gave Juarez and Gonzalez some of the money. Sometime after the offense, Gonzalez learned Hernandez's identity. Hernandez wanted half of the proceeds from the robbery, although Maldonado stated that he did not intend to give Hernandez any money. Maldonado, Juarez, and Gonzalez then used cocaine purchased by Maldonado after the offense. Maldonado and Juarez went to a casino in Oklahoma shortly thereafter.

The day after Hashemi's death Maldonado, Juarez, Gonzalez, and Maldonado's uncle, Michael Salazar, went to purchase a new cell phone for Juarez because he had intentionally broken his after the robbery and murder. They then went to Irving to use cocaine and marijuana at Salazar's apartment, although Juarez did not use drugs at that time, and to get tattoos. Salazar's neighbor, Ariel Armas testified that Maldonado and

Juarez told Salazar and him that Maldonado had shot Hashemi. Juarez said that it was a robbery gone bad and that he did not intend for anyone to be shot, although Armas believed that Juarez and Maldonado both were bragging about it. Gonzalez was bragging about the incident as well. Maldonado and Juarez indicated that the robbery was planned by an unnamed fourth person who worked at the Exxon. Maldonado had approximately $4,000 and Gonzales had approximately $1,000. Before they left they taped money in an envelope. Maldonado, Juarez, and Gonzalez borrowed a vehicle from Salazar to return to Ennis in which they were apprehended. Money and cocaine were found in the trunk of that car.

In the early morning hours of the day after Hashemi's death, all of the employees of the Exxon operated by Hashemi were called in for questioning because Hashemi was missing. An employee had to leave and go get Hernandez because he did not have a ride. After reviewing the security camera footage it was shown that Hernandez had been surreptitiously texting on his cell phone the night before. After being questioned, Hernandez admitted his involvement in the robbery and that "they had been trying to get me to set up a robbery for three weeks." His second written statement claimed that he had done it because he and his loved ones had been threatened. Hernandez led law enforcement to Juarez and Maldonado's homes.

A search of Juarez's bedroom in his parents' home led to the discovery of two boxes of nine millimeter ammunition and two magazines that appeared to fit a Mac-11.

A search of Maldonado's mother's home resulted in the discovery of the .380 caliber pistol later determined to be the weapon used to kill Hashemi, a Mac-11, and a shotgun.

Maldonado gave a statement after his arrest where he admitted only to burning the minivan but claimed that an individual named Francisco Soto had committed the robbery and murder. Maldonado led police to Hashemi's body. The phone number Maldonado gave for Soto was the same as Hernandez's but the last four digits were in a different order. No one fitting the name and description provided by Maldonado was ever located.

Cell phone records from Maldonado, Juarez, and Hernandez showed that there were text messages and phone calls during the time leading up to the robbery/murder primarily between Hernandez and Juarez. Text messages which were retrieved showed that Juarez asked Hernandez if Hashemi was there and how much money there was. Hernandez replied that there was "9." Hernandez also sent Juarez a text message to inform him that Hashemi had left.

Gonzalez, a juvenile at the time of the offense, was given a plea bargain of 45 years in prison in exchange for his truthful testimony at trial. Juarez had given a statement to the investigator for the district attorney as well, but no agreement was reached on a plea bargain. In his statement, Juarez admitted to being involved in the planning, sending the messages to Hernandez, being present at the robbery, and

described the events of the shooting which were similar to Gonzalez's with the exception that Maldonado was not listed by name.

*Analysis*

A person commits capital murder if he intentionally causes the death of an individual while in the course of committing or attempting to commit robbery. TEX. PEN. CODE ANN. § 19.03(a)(2) (West 2011); *Johnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992), *cert denied*, 510 U.S. 852, 114 S. Ct. 154, 126 L. Ed. 2d 115 (1993); *Frank v. State*, 183 S.W.3d 63, 72 (Tex. App.—Fort Worth 2005, pet. ref'd). The law of parties applies to the offense of capital murder. *Johnson*, 853 S.W.2d at 534; *Frank*, 183 S.W.3d at 72.

The jury was instructed that it could find Maldonado guilty of capital murder in any of three different ways: (1) as a principal; (2) as a party under section 7.02(a)(2) of the Texas Penal Code; and (3) as a co-conspirator under section 7.02(b) of the Texas Penal Code. The jury returned a general verdict; therefore, if the evidence is sufficient to support a guilty finding under any of the allegations submitted, we must uphold the jury's guilty verdict. *Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005).

Maldonado contends that the evidence was insufficient to establish that he was the shooter and that Gonzalez was the one who shot Hashemi. Maldonado does not contend that there was no specific intent to kill. Further, Maldonado does not complain that the accomplice testimony was insufficiently corroborated or point to any specific

element of the offense for which there is no evidence. Rather Maldonado contends that Gonzalez's story was unbelievable and therefore the jury should not have believed him.

However, Gonzalez's credibility is an issue for the jury to determine. We are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 and 326 (1979). There was other evidence that connected Maldonado to the crime, including, but not limited to, his purchase and ownership of the murder weapon, the DNA evidence that could not exclude him as a contributor, and the testimony of Armas that Maldonado was the shooter and bragged about killing Hashemi. Viewing the evidence in a light most favorable to the verdict, we find that the evidence was sufficient for the jury to have determined beyond a reasonable doubt that Maldonado was guilty of capital murder as the shooter of Hashemi. We overrule issue one.

### Admission of Business Records

Maldonado complains that the trial court abused its discretion in the admission of business records that were not on file for fourteen days prior to trial. However, by Maldonado's own admission, when the records at issue were offered into evidence, counsel for Maldonado affirmatively stated that he had no objection to the admission of those records. Maldonado concedes in his brief that it is well-settled if a defendant

affirmatively states that he has no objection to an item he sought to have suppressed, he waives any complaint to its admission, and cites to *Moraquez v. State*, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986) in support of that proposition. The State also contends that error was waived. We agree and find that the objection was waived. We overrule issue two.

*Peremptory Challenges*

In his third issue, Maldonado complains that the trial court erred by denying a challenge for cause to a member of the venire panel because she expressed a bias in favor of believing the testimony of police officers. The State contends that Maldonado cannot show harm from the denial because he did not ask for additional peremptory challenges.

Before harm can be shown on the record with respect to a trial court's denial of a challenge for cause, a defendant must: (1) use a peremptory strike on the complained-of venire member; (2) exhaust his peremptory strikes; and (3) request an additional peremptory strike to use upon a specifically identified objectionable venire member who, because the extra strike is denied, actually sits on the jury. *See Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Busby v. State*, 253 S.W.3d 661, 670 (Tex. Crim. App. 2008). Our review of the record shows that counsel for Hernandez objected to the denial of challenges for cause as to four jurors and identified four other jurors who were actually seated on the panel, and Maldonado adopted the objection by

Hernandez.  However, no one requested additional strikes from the trial court.  Therefore, there was no harm even if the denial was erroneous.  We overrule issue three.

*Admission of Evidence*

Maldonado complains that under rule 403 of the rules of evidence the trial court abused its discretion in the admission of three autopsy photographs in his fourth issue, six photographs of Hashemi's body as it was found in the woods in his fifth issue, and a photograph of Hashemi's body from the waist up that had been taken in the woods where his body was found in his sixth issue.  *See* TEX. R. EVID. 403.

Under rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence.  TEX. R. EVID. 403.  Rule 403 carries a presumption that relevant evidence will be more probative than prejudicial and favors the admission of relevant evidence.  *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007).  When the evidence is a photograph, if the photograph has elements that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the helpful aspects are substantially outweighed by the emotional and prejudicial aspects.  *Erazo v. State*, 144 S.W.3d 487, 491-92 (Tex. Crim. App. 2004).

Our analysis under rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In determining whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice, relevant factors include "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

We review the trial court's ruling on the admissibility of a photograph under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *See Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009).

*Autopsy Photographs*

Maldonado complains that the trial court abused its discretion by admitting photographs taken during the autopsy of Hashemi. The State offered five photographs from the autopsy. The first, which was not objected to, depicted Hashemi's face. The second showed Hashemi from the thighs up to his head with his shirt pulled up to

around his shoulders. The third showed a closer view of the bullet wound with the hair surrounding the bullet wound shaved and a label with a ruler was shown. The fourth picture was a close up picture of the wound with the ruler and label clearly depicted. The fifth was a picture of the bullet remnant recovered from Hashemi. The fifth photograph was admitted without objection as well.

Maldonado contends that because there was no dispute that Hashemi died from a gunshot wound, the photographs had no probative value but were unfairly inflammatory and prejudicial. We disagree. Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009) (*citing Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997).

The three photographs were admitted for their usefulness in assisting the medical examiner's testimony. To the extent that they may be gruesome, they portray no more than the gruesomeness of the injuries inflicted by Maldonado and his accomplices. Thus, we find that the trial court's decision to admit them was within the zone of reasonable disagreement and was not an abuse of discretion. We overrule issue four.

*Photographs at Scene*

In his fifth issue Maldonado complains that the trial court abused its discretion by admitting six photographs taken in the woods where Maldonado had led law

enforcement to Hashemi's body. In his sixth issue Maldonado complains of one photograph admitted during the testimony of Gonzalez depicting Hashemi's body from the waist up as it was found by police in the woods.

Relating to issue five, the first and second photographs show Hashemi's body lying in the woods from a distance and show what looked like a trail where Hashemi was dragged. The third is a photograph looking down at Hashemi's body as it was found. The fourth is a photograph, taken from a side angle, of Hashemi's body from the waist up with his shirt pulled up, ostensibly from being dragged across the ground by his legs. The fifth is a photograph of Hashemi's back which showed dirt marks on his shoulders which appear to be signs of Hashemi having being dragged across the ground. The sixth is a close-up photograph of the bullet wound. Maldonado argues that the photographs had no probative value because it was undisputed that Hashemi was shot and that his body was left in the woods.

The photograph in issue six is a photograph facing the front of Hashemi's body from the waist up as it was discovered in the woods which was admitted during Gonzalez's testimony but was not discussed further after its admission.

We also disagree with Maldonado's contention that the photographs had no probative value or were unfairly prejudicial. The photographs served to corroborate the testimony of Gonzalez regarding how Maldonado and Gonzalez dragged Hashemi's body through the woods by his legs, the position of the body when they left it, and

showed the single bullet wound. The photographs were not bloody or any more gruesome than expected but depicted what Maldonado and his accomplices had done. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Viewing the photographs and using the appropriate legal standards, we do not find that the trial court's decision to admit the photographs was outside of the zone of reasonable disagreement. We overrule issues five and six.

*Denial of Instruction and Motion for Mistrial*

In his seventh issue, Maldonado complains that the trial court erred by denying his request for an instruction to disregard after the trial court sustained an objection to relevance regarding the sawed-off shotgun that was found with the .380 handgun and the Mac-11. The question sought an answer regarding whether it was easier to hide under a car seat because it was a shorter length barrel. After the trial court refused to instruct the jury, Maldonado asked for a mistrial which was also denied.

The shotgun itself had been admitted into evidence after objections only to chain of custody and improper foundation. The officer testified that the barrel had been shortened and that it appeared that it had been made to be used as a handgun, also without objection. The State then asked the officer, "…would it be easier or harder to conceal, say, under the seat of a vehicle?" to which the officer answered, "Easier." Maldonado objected as to ambiguity, questioning about whether it was easier or harder to conceal as to what. The State withdrew the question.

The State next asked the officer if it would be easier or harder to conceal a sawed-off barrel shotgun than one with a full length barrel under the seat of a car, and Maldonado objected as to relevance. There was a discussion off the record and the trial court then sustained the objection. Maldonado then asked for an instruction and for a mistrial, which the trial court denied.

The State argues that Maldonado's objection to the first question was untimely and did not comport with his objection at trial. An objection is timely if it is made as soon as the ground for the objection becomes apparent, i.e., as soon as the defense knows or should know that an error has occurred. *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008). Generally, this occurs when the evidence is admitted. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). If a party fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived. *Id*. Maldonado has shown no legitimate reason why he did not object when the question was asked; therefore that issue has not been preserved for our review because the objection was made after the answer was given.

To the extent that Maldonado is complaining about the second objection, we will assume without deciding that the trial court abused its discretion in failing to give an instruction to disregard after sustaining Maldonado's objection. When a trial court errs in failing to provide an instruction to disregard, reversal of the judgment of the trial

court is warranted only if the error affected the substantial rights of the parties. TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Scales v. State*, 380 S.W.3d 780, 786 (Tex. Crim. App. 2012) (*quoting King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). We will not overturn a verdict if we have fair assurance that the error in question either did not influence the jury or, if it did influence the jury, that its effect was only slight. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In the instant case, having assumed there was error, we do not believe that the error provided anything more than a slight influence on the jury, if any influence at all. The shotgun was admitted into evidence and other testimony was given regarding its discovery with the weapons used in the robbery and murder of Hashemi. There was overwhelming evidence of guilt through the testimony of Maldonado's accomplice, the DNA evidence, Maldonado's ownership of the murder weapon, and Maldonado's bragging about the offense to Armas. The testimony about the shotgun comprised a very small part of the testimony of the entire trial. We hold that the trial court's refusal to provide a limiting instruction did not have a substantial and injurious effect or influence on the jury's verdict.

Further, "[a] mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (*quoting Ladd v. State*, 3 S.W.3d

547, 567 (Tex. Crim. App. 1999)).  Having found that the assumed error to give an instruction to disregard was harmless, we do not find that the trial court abused its discretion by denying Maldonado's motion for mistrial.  We overrule issue seven.

*Admission of Casino Evidence*

In his eighth issue, Maldonado complains that the trial court abused its discretion by admitting a DVD and four CDs from a casino Maldonado and Juarez visited on the night of Hashemi's murder because they were not relevant.  The four CDs had been compiled and put onto the DVD, and showed Maldonado and Juarez entering the Winstar Casino in Oklahoma late in the night on the night of the murder. Maldonado contends that the evidence was not relevant because it did not make any fact of consequence relating to the capital murder more or less probable.  *See* TEX. R. EVID. 401.

Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence.  *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).  The evidence of Maldonado and Juarez entering the casino shortly after robbing Hashemi of a substantial sum of money provided at least "a small nudge" in providing corroboration of the testimony of Gonzalez, whose credibility was highly contested. The trial court's decision to admit the exhibits was not outside of the zone of reasonable disagreement and therefore not erroneous.  We overrule issue eight.

*Admission of Cocaine Evidence*

In his ninth issue, Maldonado complains that the trial court abused its discretion in admitting baggies of cocaine and a lab report establishing that the powder in the baggies contained cocaine because the evidence was not relevant. Maldonado argues that the evidence was irrelevant because it did not make the offense of capital murder any more or less probable. However, there was testimony by multiple witnesses regarding Maldonado, Juarez, and Gonzalez using cocaine together after the offense. The baggies of cocaine were found with the money that had been taped up in the trunk of the vehicle in which Maldonado, Juarez, and Gonzalez were riding at the time of their arrest and helped to corroborate the testimony of Gonzalez. The trial court did not abuse its discretion by admitting the evidence. We overrule issue nine.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed July 25, 2013
Do Not Publish
[CRPM]