

NUMBER 13-13-00559-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

XAVIER SALINAS,                                                           Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

---

**On appeal from the 117th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Chief Justice Valdez**

Appellant was convicted of continuous family violence, a third-degree felony, enhanced to a first-degree felony under the habitual felony statute, and the jury sentenced him to sixty years' incarceration.  *See* TEX. PENAL CODE ANN. § 25.11 (West, Westlaw through 2015 R.S.).  By four issues, appellant contends that:  (1) the evidence is legally

insufficient to support a finding that he intentionally or knowingly caused or intended to cause serious bodily injury to the complainant; (2) the evidence is factually insufficient to support a finding that he intentionally or knowingly caused serious bodily injury to the complainant; (3) his trial counsel rendered ineffective assistance of counsel by failing to object to the relevance of the testimony concerning injury to a child, which was harmful and prejudicial; and (4) the trial court "erred in allowing testimony concerning injury to a child to be admitted and [in allowing] hearsay upon hearsay statements made by the officer in the defendant[']s interrogation video" to be admitted. We affirm.

## I. BACKGROUND

Armando Vasquez, a police officer with the Corpus Christi Police Department, responded to a 911 call at the complainant's residence on November 11, 2012 at 10:19 a.m. Officer Vasquez testified that when he arrived, the complainant, who was crying, "scared," and "frantic," was outside and told him that appellant had "just hit" her. Officer Vasquez stated that the complainant explained that appellant woke her up because it was hot and asked her to turn on the air conditioner. According to Vasquez, when the complainant told appellant to do it, appellant "got upset, started arguing, punched her in the face or the head [causing] her to hit the dresser," which caused her pain. Officer Vasquez took the complainant and her children to another residence. Officer Vasquez testified that the complainant said that she injured her head when appellant hit her.

Manuel Dominguez, a police officer with the Corpus Christi Police Department, testified that on December 22, 2012, he was dispatched to the complainant's residence and that when he arrived, the complainant was "pretty mad" and "breathing heavily." Officer Dominguez said, "It looked like she was in a fight." According to Officer

2

Dominguez, the complainant claimed that appellant was carrying her son, that her son told her that appellant had bitten him, that appellant spanked, kicked, and pushed her son, and that her son fell after appellant pushed him. Officer Dominguez stated that the complainant reported that when she attempted to intervene, appellant turned around and started punching her in the chest and ribs with his closed fist, which caused her pain. Officer Dominguez arrested appellant.

Matt Harmon, a police officer with the Corpus Christi Police Department, testified that he was also dispatched to the complainant's residence on December 22, 2012. He described the complainant as being "very upset," "crying," and "distraught." Officer Harmon stated that the complainant told him that appellant struck her with his fist, and Officer Harmon observed that the complainant had slight red marks on her ribs and that her son had a "large welt" on the back of his head.

Javier Cantu, a police officer with the Corpus Christi Police Department, testified that on April 20, 2013, he was dispatched to Christus Spohn South Hospital in reference to a walk-in assault. When he arrived, he saw the complainant crying, and she had a black eye. Officer Cantu testified that the complainant "was upset, frightened, in pain, crying, [and] sort of [in] disarray." Several pictures taken on that date were admitted into evidence, and Officer Cantu stated that the pictures displayed a "hematoma" on the back of the complainant's head, defensive wounds on her hands, and injuries to the left side of her head and face.

The complainant testified that she has two children, that appellant was her ex-husband, and that they had been together on and off for about twelve years.[1] The

---

[1] The trial court granted the State's request to treat the complainant as a hostile witness and allowed

3

complainant stated that on April 20, 2013, appellant banged on her door accusing her of cheating. The complainant testified that she left her residence by exiting from another door because she did not want to be alone with him. The complainant agreed that at that time she was afraid of appellant and that once she was outside of the residence, she "yelled for help maybe once." The complainant explained that she was injured when she fell to the concrete floor after appellant gave her a bear hug from behind. She said that she "fell out of his arms and hit the concrete." The complainant believed that she had told Officer Cantu the same thing when she was interviewed.

The complainant testified that she blacked out when she hit the concrete and that when she awoke, her face was hurting. According to the complainant, appellant left when he saw a neighbor open the door to his residence. Eventually, the complainant admitted that she told the police that appellant had slammed her to the floor and that she feared for her life.

The complainant testified that she went to the hospital on April 20, 2013, after her doctor told her that she had a "very large contusion" on the back of her head. The trial court admitted the complainant's hospital records from that date, which showed that the complainant told hospital personnel that appellant "assaulted her about two hours ago, hitting her head on pavement" and documented, "Assault by History Physical; Weapon Used 'Bear Hug and Threw PT to Ground.'"[2]

When asked, the complainant agreed that at the hospital she told the officer that "I'm scared he's going to come after me" and "[h]e said he didn't want no one else to have

---

the prosecutor to ask the complainant leading questions.

[2] On cross-examination, the complainant stated that at the hospital she was given pain medication.

4

me, he couldn't have me, nobody else was going to have me, and he would kill me." The complainant also agreed that she told the cops that appellant "slammed" her to the floor. The complainant testified that she told the officer that appellant "picked me up and he threw me like a rag doll," that "she had a contusion to the back of her head, [and] that she blacked out." The complainant testified that at that moment she feared for her life. The complainant answered, "Yes" when asked if she hurt her neck and her back when she fell on the concrete.

Regarding the December 22, 2012 incident, the complainant agreed that the police were called on that date. When asked why she called 911, the complainant replied, "I believe that my pocket—it was a pocket dial. They called back about twice and I answered." The complainant denied that she told the 911 operator that appellant hit her and said, "At the beginning, it was due to another situation, but I believe I did state that later and that he did hit me but—." The complainant stated that she told the 911 operator that appellant hit her three year-old son; however, she did not recall stating that appellant attacked her when she attempted to stop appellant from kicking her son. After refreshing her memory by silently reading her statement to the officer from that date, the complainant agreed that she had said that appellant attacked her when she attempted to stop him from kicking her son. The complainant agreed that she told the officer that appellant hit and kicked her; however, she testified at trial that appellant had not kicked her. The complainant agreed that she felt pain when appellant hit her, that he threatened her, and that she felt at the time as if appellant would kill her.[3]

---

[3] On cross-examination, the complainant testified that she made up the allegations that appellant hit her on December 22, 2012 "to get him into trouble so that he could get arrested for trying to discipline [her] son because [she] was very upset." She also stated that at that time no charges were brought against

5

The jury found appellant guilty of continuous family violence and sentenced him to sixty years' confinement. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant contends that the evidence is legally insufficient to support a finding that he intentionally or knowingly caused serious bodily injury to the complainant.[4]  *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West, Westlaw through 2015 R.S.) (requiring that the State prove that appellant caused "bodily injury"); *id.* § 1.07(a)(8) (West, Westlaw through 2015 R.S.) (defining "bodily injury" as "physical pain, illness, or any impairment of physical condition").

## A.    Standard of Review and Applicable Law

In a sufficiency review, we examine the evidence in the light most favorable to the prosecution to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.[5]  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.).  The fact finder is the exclusive judge of the facts, the credibility of witnesses, and of the weight to be given testimony.  *Brooks*, 323 S.W.3d at 899.  We must resolve any evidentiary inconsistencies in favor of the judgment.  *Id.*

---

appellant.

[4] Appellant has not challenged any other element of the offense.  Thus, we need not address those elements.

[5] By his second issue, appellant contends that the evidence is factually insufficient to support a finding that he intentionally or knowingly caused serious bodily injury to the complainant.  However, under *Brooks*, we no longer apply a separate factual sufficiency review, and we are not allowed to reverse and remand for insufficient evidence.  *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.).  We must apply the above-stated standard of review, and if the evidence is insufficient, we render an acquittal.  *See id.*  Thus, we no longer refer separately to legal and factual sufficiency review under *Brooks*.  *See id.*  Accordingly, we overrule it.

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A person commits the offense of continuous violence against the family,

> if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an offense under Section 22.01(a)(1) against another person or persons whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code.
>
> [And, i]f the jury is the trier of fact, members of the jury are not required to agree unanimously on the specific conduct in which the defendant engaged that constituted an offense under Section 22.01(a)(1) against the person or persons described by Subsection (a) or the exact date when that conduct occurred. The jury must agree unanimously that the defendant, during a period that is 12 months or less in duration, two or more times engaged in conduct that constituted an offense under Section 22.01(a)(1) against the person or persons described by Subsection (a).

TEX. PENAL CODE ANN. § 25.11.

Section 22.01(a)(1) states that "a person commits an offense if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." *Id.* § 22.01(a)(1). Section 1.07(a)(8) defines bodily injury as "physical pain, illness, or any impairment of physical condition."[6] *Id.* § 107(a)(8).

## B. Discussion

Appellant argues that the evidence is insufficient to show that he caused "serious bodily injury." However, we agree with the State that, under a hypothetically correct jury charge, it was not required to show that appellant caused "serious bodily injury." Instead,

---

[6] Appellant only challenges the "bodily injury" element of the offense. Thus, we will only discuss the issue presented. *See* TEX. R. APP. P. 47.1.

the State was required to show that the complainant suffered "bodily injury" such as physical pain, illness, or any impairment of physical condition. *See id.* §§ 1.07(a)(8), 22.01(a)(1), 25.11(a). Thus, construing appellant's brief liberally, we will address whether there was sufficient evidence presented that appellant caused "bodily injury" to the complainant.

The State alleged in the indictment that appellant committed the offense of continuous family violence by intentionally, knowingly, or recklessly causing bodily injury to the complainant, a member of appellant's household or person with whom appellant had a dating relationship, by striking the complainant on or about November 11, 2012, by striking the complainant with his hand on or about December 22, 2012, and by grabbing the complainant with his hand and causing the complainant to contact the ground on or about April 20, 2013 and that said conduct of appellant occurred during a period that was twelve months or less in duration.[7] Evidence was presented that: (1) on November 11, 2012, appellant punched the complainant in the face or the head which caused her to hit the dresser; (2) that on December 22, 2012, appellant punched the complainant in the chest and ribs with his closed fist, which caused her pain; and (3) on April 20, 2013, appellant had slammed the complainant to the floor, that she feared for her life, that she suffered a contusion to her head, and that she was in pain. Finally, the complainant agreed that she felt pain when appellant hit her.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational fact-finder could have found that appellant caused the complainant to suffer

---

[7] As previously stated, appellant challenges the evidence as not supporting a finding that he caused the complainant serious bodily injury. He does not challenge the other elements of the offense.

8

pain on all three occasions beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *see also Brooks*, 323 S.W.3d at 898–99. Therefore, we conclude the evidence was sufficient to show that the complainant suffered bodily injury on each of the three charged occasions. We overrule appellant's first issue.

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, appellant contends that his counsel rendered ineffective assistance by failing to object to the relevance of the injury to a child evidence and under rule of evidence 403.[8] The State responds that the evidence was relevant and admissible; thus, no objection was required. The State also notes that appellant's trial counsel objected to the admission of evidence regarding the injury to the child on grounds that it was an extraneous offense that was highly prejudicial and that it was irrelevant.

Under *Strickland v. Washington*, an appellant claiming ineffective assistance must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness, and (2) "there is a probability sufficient to undermine the confidence in the outcome that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1994)).

Appellant's trial counsel objected to the evidence regarding the assault of the complainant's son, outside the jury's presence prior to its admission, stating the following:

> Obviously, this is not an injury to a child case and I think if any testimony comes out eliciting or any testimony's elicited that my client may or may not have done that, that is not a proper extraneous offense to be

---

[8] In his brief, appellant appears to argue that his trial counsel was also ineffective by not objecting on the basis that the complained-of evidence was not relevant. However, appellant does not provide a clear and concise argument with citation to appropriate authority to support such a conclusion. Therefore, we conclude that to the extent that appellant makes such an argument that it is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

bringing before this Court. It's not part of the indictment. I understand that it may be part of the offense that the State is trying to prove with regards to how the [complainant] got hit. However, I think the State can say that the [complainant] intervened. We don't have to say that it was her son or how old the kid was. It can be, to the juror's knowledge, an adult. I think we can all agree that injury to a child cases are very sensitive, and *I think it's incredibly prejudicial* if that information was to come out. That offense was, in fact, no[-]charged and has not been re[-]indicted at least as of now. So I think for that information to come out, I don't think it's necessary. *The prejudice far outweighs the relevancy*. I think the State can certainly elicit testimony that what happened to the [complainant] whenever she tried to intervene, you know, without mentioning that it was a child, her son, or a little boy.

(Emphasis added). Subsequently, appellant's trial counsel stated:

I think [admitting evidence of appellant's alleged injury to a child is] incredibly prejudicial, and especially when I'm gonna have to voir dire on people on basically as if this is an injury to a child case as well. And if I have to do that, I have to do that. But there's a huge portion, I think, of society and of people, at least in my experience and I'm sure in the Court's experience as well that refuse to be on those kinds of cases, or hates those kinds of cases, or anyone that does anything to a child, or if it is alluded that they do anything to a child. I think it's gonna be entirely prejudicial. The odds of finding him guilty of an offense just because of that I think are very high.

Rule of evidence 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Tex. R. Evid. 403. To have preserved error, if any, under rule 403, appellant's trial counsel was required to (1) timely object or move to strike, and (2) state the specific ground, unless it was apparent from the context of the argument. *See id.* R. 103(a). In addition, if an objection is made outside the presence of the jury, trial counsel is not required to re-urge the objection in front of the jury in order to preserve error. *See id.* R. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal.").

10

Here, outside the jury's presence, appellant's trial counsel stated that the complained-of evidence was incredibly prejudicial and that the prejudice far outweighed the relevance. We conclude that it is apparent from the context of appellant's trial counsel's argument that she was objecting to the evidence under rule 403. *See id.* R. 403. In addition, because appellant's trial counsel made the objection outside the jury's presence, she was not required to renew that objection in order to preserve error, if any, in the admission of the complained-of evidence. *See id.* R. 103(a). Therefore, we cannot conclude that appellant's trial counsel failed to preserve error in this case and that she rendered defective assistance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1994) (requiring a showing of both deficient performance and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Moreover, appellant has not argued that but for trial counsel's alleged error, the result of the proceeding would have been different.[9] *See id.* We overrule appellant's third issue

## IV. ADMISSION OF HEARSAY TESTIMONY

By his final issue, appellant contends that the trial court improperly admitted hearsay upon hearsay in a video of a police interview of appellant. Appellant does not specify which statements he is contending constitute hearsay upon hearsay and whether

---

[9] The trial court admitted the complained-of evidence under the same-transaction contextual evidence exception to rule 404(b)'s prohibition of the admittance of extraneous offenses. *See* TEX. R. EVID. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) ("Evidence of another crime, wrong, or act also may be admissible as same-transaction contextual evidence where 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, . . . of any one of them cannot be given without showing the others.'"); *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (explaining that extraneous offenses constituting same transaction contextual evidence are admissible to show the context in which the criminal act occurred and stating, "This evidence is considered 'res gestae,' under the reasoning that events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence").

11

those portions were actually played for the jury.[10]  Appellant only generally alleges that certain unspecified questions asked by the officers during his interview constitute hearsay.

After generally stating that hearsay is inadmissible, appellant states the following:

> In the instant case, the Interrogation Officer Richey literally says "Officer Lisowski is getting those statements from a report from Officer Cantu. . . . Officer Cantu is getting those statements from, allegedly, the [complainant].  The Court overruled Defense objections and essentially held that since the Defendant waived his rights under *Miranda*, that the video is admitted.  This is an abuse of discretion.  For hearsay upon hearsay, each level of hearsay has to have an exception to it and the analysis must be done for each level."

> "The officer should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to tell the jury the information upon which he acted[.]"  That is exactly what happened in this case.  The officer related hearsay statements on the video, based on statements from another officer AND the complaining witness while interrogating Mr. Salinas.  This hearsay upon hearsay was played to the jury on the video, and should have been muted or omitted.

We are unable to address appellant's general complaint regarding his allegation that certain questions constituted hearsay because he has not pointed to the specific questions.  We would be guessing about which questions he believes constitute hearsay were we to address this complaint.  Therefore, appellant has not shown that the trial court abused its discretion or that appellant was prejudiced in any way.  *See Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000) (overruling the appellant's complaint that the trial court allowed leading question because the appellant had not "specifically point[ed] out any of the numerous' leading-question violations allegedly committed by the State" and had not shown that the trial court abused its discretion or that he was prejudiced in any

---

[10] The record shows that only portions of the video were admitted by the trial court.

12

way); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008). ("This Court has no obligation to construct and compose appellant's issues, facts, and arguments 'with appropriate citations to authorities and to the record.'").

Moreover, courts have held that questions and statements made by a police officer while interrogating a defendant do not constitute hearsay because they are offered to give context to the defendant's replies. *See Kirk v. State*, 199 SW3d 467, 479 (Tex. App.—Fort Worth 2006, pet. ref'd) (concluding that questions asked by police officer during interview of the appellant were contextual and not admitted to prove the truth of the matter asserted); *see also Alexander v. State*, No. 03-01-00263-CR, 2002 WL 436993, at *2 (Tex. App.—Austin Mar. 21, 2002, no pet.) (mem. op., not designated for publication); *Tully v. State*, No. 05-98-00655-CR, 1999 WL 681645, at *1 (Tex. App.—Dallas Sept. 2, 1999, no pet.) (mem. op., not designated for publication). At trial, when appellant generally objected to the video as containing hearsay, the State argued that it was not asking to admit the officer's questions for the truth of the matter asserted and that the trial court should admit the questions asked because they were required in order for the listener to make sense of appellant's answers. After reviewing the video, we conclude that the trial court may have properly found that the officer's questions in the video were not being admitted for the truth of the matter asserted and were instead admitted in order to give context to appellant's replies. Appellant has not challenged this basis for the trial court's ruling. Therefore, we cannot conclude that the trial court abused its discretion by admitting portions of the video interview that included the officer's questions. We overrule appellant's final issue.[11]

---

[11] Our review of the video shows that the subject matter of the officer's questions, which related to the charged offense, were admitted at trial, without objection, through other witness's testimony. Thus, no

## V.     CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of November, 2015.

---

reversible error is shown.  *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule, therefore, is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.  This rule applies whether the other evidence was introduced by the defendant or the State.").