# NOS. 12-22-00005-CR
# 12-22-00006-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***KIRKLAND LAMAR WARREN, APPELLANT*** | § | ***APPEALS FROM THE 114TH*** |
| ***V.*** | § | ***JUDICIAL DISTRICT COURT*** |
| ***THE STATE OF TEXAS, APPELLEE*** | § | ***SMITH COUNTY, TEXAS*** |

## *MEMORANDUM OPINION*

Kirkland Lamar Warren appeals his convictions for possession of a controlled substance and aggravated assault with a deadly weapon. In three issues, Appellant argues that the evidence is insufficient, he is entitled to a new punishment trial, and his court cost assessment is illegal. We affirm the convictions, modify the judgments to correct errors, and reverse and remand for a new punishment trial and court cost assessment.

## BACKGROUND

Appellant was charged with manufacture or delivery of methamphetamine in an amount of four grams or more but less than 200 grams[1] and aggravated assault with a deadly weapon,[2] each enhanced by two previous consecutive felony convictions. He pleaded "not guilty," and the matter proceeded to a bench trial.

---

[1] A first-degree felony punishable, with the alleged enhancements, by imprisonment for a term of life, or not more than ninety-nine years or less than twenty-five years. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6) (West Supp. 2021), 481.112(a), (d) (West 2017); TEX. PENAL CODE ANN. § 12.42(d) (West 2019).

[2] A second-degree felony as alleged punishable, with the alleged enhancements, by imprisonment for a term of life, or not more than ninety-nine years or less than twenty-five years. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (West Supp. 2021); n.12.42(d).

At trial, the evidence showed that Jeana Dunbar called 911 and reported Appellant was torturing her because he thought she stole his money. When Smith County sheriff's deputies arrived, Dunbar said that Appellant poured gasoline on her while she was asleep in bed and she believed her life was in danger. When the deputies contacted Appellant, he invited them into the house, which contained an overwhelming odor of gasoline that grew stronger as they approached the bedroom. In the bedroom, they found a mattress wet with gasoline, a shotgun, a glass pipe, and a bag of methamphetamine. Appellant claimed possession of the methamphetamine and admitted to pouring gasoline on Dunbar because he wanted to "put the fear in her" and "teach her a lesson" for taking his money.

Ultimately, the trial court found Appellant "guilty" of aggravated assault with a deadly weapon and the lesser included offense of possession of a controlled substance in an amount of four grams or more but less than 200 grams.[3] The court further found that Appellant used or exhibited a deadly weapon, namely the firearm, in the commission of the latter offense. Appellant pleaded "true" to the enhancement paragraphs. The judgments reflect that his punishment was assessed at imprisonment for a term of forty years in each case. This appeal followed.

## EVIDENTIARY SUFFICIENCY

In Appellant's first issue, he asserts that the evidence is insufficient to support his conviction.

### Standard of Review and Applicable Law

The *Jackson v. Virginia*[4] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315-16, 99 S. Ct. at 2686-87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a

---

[3] With the enhancement paragraphs, the lesser included offense is likewise punishable by imprisonment for a term of life, or not more than ninety-nine years or less than twenty-five years. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (West Supp. 2021); TEX. PENAL CODE ANN. § 12.42(d).

[4] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

To prove Appellant guilty of possession of a controlled substance in this case, the State was required to prove that he knowingly or intentionally possessed methamphetamine in an amount of four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE § 481.115(a), (d) (West Supp. 2021). To prove him guilty of aggravated assault with a deadly weapon, the State was required to prove that he intentionally or knowingly threatened Dunbar with imminent bodily injury by pouring gasoline on her and used or exhibited a deadly weapon, namely gasoline, during the assault's commission. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (West Supp. 2021).

**<u>Analysis</u>**

Without citations to the record or application of law to the facts of this case, Appellant concludes that the evidence is insufficient to sustain the trial court's verdicts. An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record. TEX. R. APP. P. 38.1(i). An appellant waives an issue on appeal if he fails to adequately brief that issue by not providing supporting arguments,

substantive analysis, and appropriate citations to authorities and the record. ***Chaves v. State***, 630 S.W.3d 541, 555 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing ***Lucio v. State***, 351 S.W.3d 878, 896-97 (Tex. Crim. App. 2011); ***Busby v. State***, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); ***Cardenas v. State***, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (defendant inadequately briefed complaint where he neglected to present argument with citation to appropriate authority)); *see also* ***Ray v. State***, 176 S.W.3d 544, 553 n.7 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

An appellate court has no obligation to construct and compose issues, facts, and arguments with appropriate citations to authorities and the record for an appellant. *See* ***Wolfe v. State***, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017); ***Busby***, 253 S.W.3d at 673. A brief that fails to apply the law to the facts does not comply with Texas Rule of Appellate Procedure 38.1 and presents nothing for our review. *See* ***Swearingen v. State***, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003). Although Appellant has waived his first issue, we will consider it in the interest of justice.

At trial, Smith County Sheriff's Office dispatcher Amber Wallace sponsored a recording of Dunbar's 911 call. On the recording, Dunbar speaks in a low, rushed voice and stutters as she tells the dispatcher that she is being tortured by "Kirk Warren" and must end the call quickly before he returns.

Former Smith County Sheriff's Deputy Josh Hill testified that he responded to Dunbar's call. When he arrived at the residence, Dunbar was "hanging out the window waving [him] down." Appellant exited the residence and contacted Hill. A few minutes later, an observably distressed Dunbar exited the residence yelling, cursing, and saying that Appellant was torturing her and poured gasoline on her. Both subjects displayed very dilated pupils, which often indicates that a person is under the influence of narcotics. Two more deputies arrived and spoke with Dunbar, leaving Appellant with Hill.

Appellant entered the residence and began telling Deputy Hill that Dunbar took his relief fund money in the approximate sum of $10,000.00. In an ashtray in the living room, Hill saw an object that he believed to be a glass crack cocaine pipe. The smell of gasoline in the residence was overwhelming. When Hill inquired about the smell, Appellant said that he poured gasoline on the bed to scare Dunbar because she took his money. Because Hill smelled the odor of gasoline on Dunbar, he asked Appellant whether he poured any gasoline on her. Appellant

4

admitted that he did so but only because he wanted to "put the fear in her" and "teach her a lesson." Under these circumstances, the gasoline could cause serious bodily injury or death because of its extreme flammability.

Because Appellant's body language told Deputy Hill that he wanted to go to the bedroom, for officer safety, Hill motioned for the other deputies to assist him. When Appellant walked into the bedroom, he immediately grabbed a shotgun. Hill quickly took the gun and handed it to another deputy. On the bedroom floor, Hill saw a clear bag containing a substance he believed to be methamphetamine and a glass pipe with a rounded bulb, which is primarily used to smoke methamphetamine. Appellant admitted that he smoked methamphetamine minutes before the police arrived.

Smith County Sheriff's Deputy Joshua Cox testified that he and Deputy John McLean were dispatched to the residence where they were greeted by a very excited Dunbar who smelled strongly of gasoline. McLean spoke with Dunbar, and then the deputies joined Deputy Hill at his request. Inside the residence, Cox saw a narcotics pipe in an ashtray and smelled a strong gasoline odor. He went to the bedroom, took the shotgun from Hill, removed a chambered shell, and handed the gun to McLean.

Inside the bedroom, Cox observed a mattress with a stain and an overwhelming odor of gasoline. He further observed a clear plastic baggy containing a crystalline substance and a glass pipe on the floor. Appellant was at first hesitant to claim ownership of the methamphetamine but then said he claimed it even though not all of it belonged to him. In a few minutes, Cox became lightheaded from the fumes in the bedroom. The room also contained exposed wiring, which, combined with the gasoline and the size and disheveled state of the room, was a safety concern.

McLean sponsored a video of the events recorded by his body camera. In the video, Dunbar approaches the deputies exclaiming her gratitude that they are there. She says that she works with Appellant and filed for a "disaster thing" for him. Appellant, high on "ice," began "schizzing" and accused Dunbar of taking his money. He was torturing her and poured gasoline on her while she was in bed asleep. She wanted to leave because her life was in danger.

Later in the video, the deputies walk to the house to assist Deputy Hill. Appellant and the deputies enter the house and walk toward the bedroom, outside of which Deputy Cox passes the shotgun to Deputy McLean. Appellant exits the bedroom and approaches McLean with his arms outstretched. McLean places him in handcuffs and informs him that he is being detained.

Appellant has a conversation with McLean in which he admits to smoking methamphetamine the previous night and states, "I'm guilty of all—everything they got." He responds affirmatively when McLean asks, "You'll take possession of everything back there? The gun, the drugs, you're just going to claim it all?" He repeats, "I'm guilty" and asks McLean, "If there was such thing as mercy, would y'all grant it?" McLean takes Appellant outside, where his body camera records a conversation between Appellant and Hill in which Hill asks, "Is it really worth covering her in gasoline?" Appellant does not deny the act. He later asks, "Would it do any good if I use the word 'please?'" Dunbar can be heard in the background telling someone, "He was trying to set me on fire, but the lighter wouldn't work."

DPS forensic scientist Micaela Steward testified that she scientifically analyzed the substance in the baggy and determined that it was 4.98 grams of methamphetamine. The methamphetamine, methamphetamine pipe, shotgun, and ammunition were admitted into evidence.

In the light most favorable to the trial court's verdict, the evidence shows that Appellant intentionally possessed 4.98 grams of methamphetamine. Therefore, we conclude that the court was rationally justified in finding, beyond a reasonable doubt, that Appellant committed possession of a controlled substance in an amount of four grams or more but less than 200 grams. See TEX. HEALTH & SAFETY CODE § 481.115(a), (d); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Brooks*, 323 S.W.3d at 899. Furthermore, in the light most favorable to the trial court's verdict, the evidence shows that Appellant intentionally threatened Dunbar with imminent bodily injury by pouring gasoline on her and used a deadly weapon, namely gasoline, during the assault's commission. Therefore, we conclude that the court was rationally justified in finding, beyond a reasonable doubt, that Appellant committed aggravated assault with a deadly weapon. See TEX. PENAL CODE ANN. § 22.02(a)(2), (b); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Brooks*, 323 S.W.3d at 899. For these reasons, we overrule Appellant's first issue.

## UNRELIABLE PUNISHMENT RECORD

In Appellant's second issue, he argues that he is entitled to a new trial on punishment because the punishment record is unreliable and cannot be corrected. Before filing his brief, Appellant filed a motion to abate for correction of inaccuracies in volume six of the reporter's record, which consists of the punishment phase of trial. Substitute court reporter Beverly E.

Dixon prepared volume six, and Appellant's counsel represented that it appears inaccurate. In a letter responding to the motion to abate, the State agreed that a reasonable question existed as to the volume's accuracy and consequently did not object to our granting the motion. This Court ordered the trial court to conduct a hearing and make written findings of fact as to whether the volume contains inaccuracies, and if so, what corrections should be made. We further ordered that if the court found the volume to be inaccurate, it should order the court reporter to conform the volume to what occurred and file certified corrections with this Court.

After a hearing, the trial court made the following pertinent findings: (1) Appellant timely requested preparation of the reporter's record, (2) any error in the transcript or missing portion of the transcript is not a result of any act or omission of Appellant or the State, (3) the parties and the court agreed that volume six is so filled with errors as to render it unusable and wholly unreliable, (4) volume six contains the sentencing portion of the trial, during which the parties called one or more witnesses, (5) in accordance with Dixon's testimony, there are no recordings, notes, or other means by which to create an accurate transcript and thus no basis to believe that Dixon or another reporter could correct and file a new record if so ordered, and (6) the missing portion of the record is of such a nature that the parties cannot reasonably be expected to stipulate to the correct contents of its erroneous portion, nor can the court on its own recollection recreate the record.

Appellant now argues that he is entitled to a new punishment trial, and the State agrees. An appellant is entitled to a new trial

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or—if the proceeding were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4) if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.

TEX. R. APP. P. 34.6 (f). "[D]epriving a defendant of part of the statement of facts to which he is entitled results in a new trial." **Perez v. State**, 824 S.W.2d 565, 567 (Tex. Crim. App. 1992).

As the trial court's findings reflect, all four of Rule 34.6(f)'s criteria have been met. Appellant timely requested the reporter's record, and volume six comprised the entirety of the testimony, evidence, and argument presented during the punishment trial. The pleadings and judgments indicate that the State sought deadly weapon findings and penalty range enhancements. It is undisputed that volume six contains inaccurate representations of what transpired during Appellant's punishment trial. The inaccuracies arose through no fault of either party, and the parties cannot stipulate or agree to the contents of the record for the appeal. Without an accurate record of what transpired during the punishment trial, neither appellate counsel nor this Court can determine whether error exists in the judgments. Consequently, the only appropriate remedy is a new punishment trial. *See **id.***; *see also **Gonzales v. State***, Nos. 12-21-00239-CR, 12-21-00240-CR, 2022 WL 3268014, at *2 (Tex. App.—Tyler Aug. 10, 2022, no pet. h.) (mem. op., not designated for publication). We sustain Appellant's second issue.

## ILLEGAL COURT COST ASSESSMENT

In Appellant's third issue, he argues that the trial court erred by assessing court costs in both cases. The State concedes the error but argues that the issue is not ripe for our review because Appellant is entitled to a new punishment hearing and, therefore, the amount of court costs has not been finalized because additional court costs might be incurred. We agree that our modification of the court costs to any particular amount might be premature, but this does not prevent us from deciding the issue of whether the trial court erred by assessing duplicate court costs and, if so, remanding for a proper court cost assessment.

The code of criminal procedure provides as follows:

> (a) In a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against the defendant.

> (b) In a criminal action described by Subsection (a), each court cost or fee the amount of which is determined according to the category of offense must be assessed using the highest category of offense that is possible based on the defendant's convictions.

8

TEX. CODE CRIM. PROC. ANN. art. 102.073(a), (b) (West 2018). In this context, we construe the phrase "[i]n a single criminal action" to mean in a single trial or plea proceeding. *Hurlburt v. State*, 506 S.W.3d 199, 203 (Tex. App.—Waco 2016, no pet.).

The record in this case shows that the allegations and evidence of both offenses were presented in a single plea proceeding, or "criminal action." *See id.* Therefore, the trial court was authorized to assess each court cost and fee only once against Appellant. *See* TEX. CODE CRIM. PROC. ANN. art. 102.073(a). However, each case's bill of costs lists many of the same fees. We conclude that the trial court erred by assessing each of these fees twice against Appellant. *See id.* Accordingly, we sustain Appellant's third issue.

## JUDGMENT ERRORS

Based on the record before us, we observe that errors not raised by Appellant exist in the judgments. First, the judgment in trial court cause number 114-1929-20 reflects that the punishment in that case was assessed by a jury, but the record indicates it was assessed by the judge. Next, the judgment in cause number 114-1928-20 reflects that the deadly weapon in that case was gasoline, but the State alleged it was a firearm, and the trial court so found.

Furthermore, the judgment in cause number 114-1928-20 incorrectly reflects that the offense of conviction in that case—possession of a controlled substance in an amount of four grams or more but less than 200 grams—is a first-degree felony. In pertinent part, the possession statute provides as follows:

> (a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1 or 1-B, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice.
>
> . . . .
>
> (d) An offense under Subsection (a) is a felony of the second degree if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams.

TEX. HEALTH & SAFETY CODE § 481.115(a). Thus, the offense of which Appellant was convicted is a second-degree felony. *See id.*

9

Finally, the judgment in cause number 114-1929-20 incorrectly reflects that the offense in that case—aggravated assault with a deadly weapon—is a first-degree felony. In pertinent part, the aggravated assault statute provides as follows:

> (a) A person commits an offense if the person commits assault as defined in § 22.01 and the person:
> (1) causes serious bodily injury to another, including the person's spouse; or
> (2) uses or exhibits a deadly weapon during the commission of the assault.
> (b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:
> (1) the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by Section 71.0021(b) 71.003, or 71.005, Family Code[.]

TEX. PENAL CODE ANN. § 22.02(a)(2), (b). The indictment in cause number 114-1929-20 does not allege either that Appellant caused serious bodily injury or that he had a family, household, or dating relationship with Dunbar. Therefore, only Section 22.02(a)(2) applies here, and the offense is a second-degree felony. *See id.*

We have the authority to correct a trial court's judgment to make the record speak the truth when we have the necessary data and information. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Our authority to reform an incorrect judgment is not dependent on the request of any party. *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.). Because we have the necessary data and information to correct the "degree of offense," "findings on deadly weapon" and "punishment assessed by" portions of the judgments here, we conclude that the judgment in cause number 114-1929-20 should be modified to reflect that the judge assessed the punishment, the judgment in cause number 114-1928-20 should be modified to reflect that the deadly weapon is a firearm, and both judgments should be modified to reflect that the offenses are second-degree felonies. *See Asberry*, 813 S.W.2d at 529; TEX. R. APP. P. 43.2(b).

## DISPOSITION

Having overruled Appellant's first issue and sustained his second and third issues, we *modify* the trial court's judgments to reflect that he was convicted of second-degree felony offenses, *modify* the judgment in trial court cause number 114-1929-20 to reflect that the judge assessed the punishment, *modify* the judgment in trial court cause number 114-1928-20 to reflect

10

that the deadly weapon is a firearm, **_affirm_** the judgments **_as modified_** with respect to Appellant's guilt, **_reverse_** the judgments with respect to the punishments and court costs imposed, and **_remand_** for a new punishment trial and court cost assessment in accordance with this opinion.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 22, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 22, 2022**

**NO. 12-22-00005-CR**

**KIRKLAND LAMAR WARREN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-1928-20)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **modified** to reflect that Appellant was convicted of a second-degree felony offense and the deadly weapon is a firearm, the judgment is **affirmed as modified** with respect to Appellant's guilt, the judgment is **reversed** with respect to Appellant's punishment and court costs, the cause is **remanded** to the trial court **for a new punishment trial and court cost assessment**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 22, 2022**

**NO. 12-22-00006-CR**

**KIRKLAND LAMAR WARREN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-1929-20)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **modified** to reflect that Appellant was convicted of second-degree felony offense and the judge assessed the punishment, the judgment is **affirmed as modified** with respect to Appellant's guilt, the judgment is **reversed** with respect to Appellant's punishment and court costs, the cause is **remanded** to the trial court **for a new punishment trial and court cost assessment**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.

*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*